## Cote *v.* Murphy et al., Appellants.

[Marked to be reported.]

*Conspiracy—Combination of employers—Wages.*

In a civil action for conspiracy where it appears that workmen engaged in building trades entered into a lawful combination to advance wages by reducing the hours of labor, and that defendants were members of an association of employers which by combination agreed among themselves that they would not sell material to contractors who conceded the advance, and induced other dealers not to furnish such material, defendants are

not liable in damages to a person in the same business who aided the strike by selling materials to the strikers and contractors, and who by reason of the combination was not able to procure all of the material which he desired.

In such a case the combination of the employers is not to force down the price of labor, but to resist a combination of the employees to artificially advance wages.

The elements of an unlawful combination to restrain trade because of greed of profit to themselves, or of malice toward plaintiff or others is lacking, and this is the essential element on which are founded all the decisions as to common law conspiracy in this class of cases. And however unchanged may be the law as to combinations of employers to interfere with wages, where such combinations take the initiative, they certainly do not depress a market price when they combine to resist a combination to artificially advance the price. By MR. JUSTICE DEAN.

*Conspiracy—Threats or menace.*

The fact that the employers and dealers, defendants, told other dealers that they would not buy from them if they furnished material to plaintiff was not such coercion and threats as constituted the acts of the combination unlawful.

*Constitutional law—Labor combinations—Acts of* 1869, 1872, 1876, 1891.

Not decided whether the acts of May 8, 1869, P. L. 1260, June 14, 1872, P. L. 1175, April 20, 1876, P. L. 45, and June 16, 1891, P. L. 300, exempting employees from penalties of unlawful combination to fix the price of labor, are void, because by their terms they embrace only a particular class of citizens, or whether their scope must be enlarged beyond the express terms of these acts so as to include within their protection all those interested in the same subject of legislation.

Argued Nov. 1, 1893. Appeal, No. 213, Oct. T., 1893, by defendant, Hugh Murphy et al., from judgment of C. P. No. 2, Allegheny Co., Jan. T., 1893, No. 175, on verdict for plaintiff, George M. Cote. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Trespass to recover damages for loss occasioned by alleged conspiracy of defendants. Before EWING, P. J.

On the trial, the evidence showed that on May 1, 1891, there was a strike in Pittsburgh in the building trades for an advance of wages. Plaintiff was a dealer in building materials who conceded the demands of the workmen. The Allegheny Planing Mill Association, of which some of the defendants were members, issued a circular " to the lumber trade " asking dealers to help resist the strike " by refusing to ship any mate

rial into this section, except it be in or on the order of legitimate planing mills or lumber dealers," giving a list which did not include plaintiff. The association also wrote to a dealer, from whom plaintiff purchased materials, that "it would be to his advantage to discontinue" supplying plaintiff, and the dealer thereafter refused plaintiff's orders.

The court refused defendant's request for binding instructions.

Verdict for $2,500, reduced by the court to $1,500, and judgment thereon; defendants appealed.

*Error assigned* was above instructions, quoting them.

*J. McF. Carpenter* and *J. S. Ferguson, E. G. Ferguson* with them, for appellants.—Any one of the defendants could have done any of the things complained of without incurring any legal responsibility: Payne v. R. R., 13 Lea, 507; Heywood v. Tillson, 75 Me. 227.

The agreement of a number of men to do that which each of them could lawfully do, does not make an actionable conspiracy: Rodgers v. Duff, 3 Moore, P. C. 209; Bowen v. Matheson, 14 Allen, 499; Mogul S. S. Co. v. McGregor, 4 Ry. & Corp. L. J. 611; L. R. 23 Q. B. Div. 598; s. c., L. R. Ap. Cas., 1892, p. 25; Bohn Mfg. Co. v. Hollis, (S. C. Minn.) 55 N. W. R. 1119.

In law a threat is a declaration of an intention or determination to injure another by the commission of some unlawful act. If the act intended to be done is not unlawful, then the declaration is not a threat in law, and the effect thereof is not intimidation in a legal sense: Payne v. R. R., 13 Lea, 507.

If we are to be held liable, then, in any strike, combination and persuasion are open to the employed and not the employers. In this state the right, if they did not otherwise possess it, is given to the employed by the acts of May 8, 1869, P. L. 1260; act of May 13, 1889, P. L. 194; act of June 16, 1891, P. L. 300.

A strike to enforce the discharge of a fellow workman has been held not to be injurious to trade and not criminal: State v. Donaldson, 3 Vroom, 151; Theiss Boycott Case, 4 N. Y. Cr. R. 403.

There is no question of public policy or interest in this case.

This was an action in tort. In such cases it is a presumption of law that every one has conformed to the law, and the burden of proof is upon him who alleges the contrary: 19 A. & E. Enc. L., p. 42; Hatch v. Bayley, 12 Cush. 27.

The evidence ought to be clear and satisfactory: Mead v. Conroe, 113 Pa. 220. The evidence should be sufficient to satisfy the conscience of a common man so that he would act upon the conviction in matters of the highest importance to his own interests, although that be short of absolute certainty. If the evidence satisfies an unprejudiced mind beyond reasonable doubt it is sufficient: Young v. Edwards, 72 Pa. 257.

*J. A. Wakefield* and *J. W. Kinnear*, for appellee.—It is true the strike offers defendants no excuse for their trespass upon plaintiff. They do not pretend that he was in any way responsible for, or directly concerned in, it. The strike, therefore, is only incidental; and as the strike itself cannot be offered by way of extenuation, neither can the advantageous pecuniary results flowing from the strike to plaintiff, if any thereby, be pleaded by defendants as exonerating them from liability to plaintiff for the damages suffered by reason of defendants' illegal acts. If the result of the strike was, as contended by defendants, highly beneficial to plaintiff, the former can hardly claim credit for it.

That defendants were engaged in shutting off competition of two kinds is clear: 1st, They wanted to shut off the competition of the western dealers, and, 2d, they desired to exclude those who might be willing to take advantage of the economic situation and obtain the trade which before was theirs.

The acts to be done had a necessary tendency to oppress individuals by unjustly subjecting them to the power of the confederates.

If the motives of the confederates be to oppress, the means they use unlawful, or the consequences to others injurious, their confederation will become a conspiracy.

The concentrated energy of several combined wills, operating simultaneously and by concert by one individual, is dangerous even to the cautious and circumspect, but when brought to bear upon the unwary it is fatal.

There is a potency in number when combined which the law cannot overlook when injury is the consequence.

The whole law of conspiracy in Penna. is summed up in the case of Morris Run Coal Co. v. Barclay Coal Co., 68 Pa. 173. See also Moore & Co. v. Bricklayer's Union, 7 Ry. & Corp. L. J. 108.

OPINION BY MR. JUSTICE DEAN, January 2, 1894 :

The defendants were members of the Planing Mill Association of Allegheny county, and Builders' Exchange of Pittsburgh. The different partnerships and individuals, composing these associations, were in the business of contracting and building and furnishing building material of all kinds. On the 1st of May, 1891, there was a strike of the carpenters, masons and bricklayers in the building trades, bringing about, to a large extent, a stoppage of building.

The men demanded an eight hour day, with no reduction in wages theretofore paid, which the employers refused to grant ; then a strike by the unions of the different trades was declared. The plaintiff, at the time, was doing business in the city of Pittsburgh as a dealer in building materials. He was not a member of either the " Planing Mill Association," or of the " Builders' Exchange ; " there were also contractors and builders, who belonged to neither of these organizations, who conceded the demands of the workmen ; they sought to secure building material from dealers wherever they could, and thus go on with their contracts ; if they succeeded in purchasing the necessary material, the result would be, that at least some of the striking workmen would have employment at a higher rate of wages than the two associations were willing to pay ; the tendency of this was to strengthen the cause of the strikers, for those employed were able to contribute to the support of their fellow workman who were idle. The two associations already named, sought to enlist all concerned as contractors and builders or as dealers in supplies, whether members of the associations or not, in the furtherance of the one object, resistance to the demands of the workmen. The plaintiff, and six other individuals or firms engaged in the same business, refused to join them, and undertook to continue sales of building material to those builders who had conceded the eight hour day. The Planing Mill Association and Builders' Exchange tried to limit their ability to carry on work at the advance, by inducing lumber dealers

and others to refrain from shipping, or selling them in quantities, the lumber and other material necessary to carrying on the retail business; in several instances, their efforts were successful, and the plaintiff did not succeed in purchasing lumber from certain of the wholesale dealers in Cleveland and Dubois, where he wanted to buy. The defendants were active members of one or other or both of the associations engaged in the contest with the striking workmen. The strike continued about two months; after it was at an end, the plaintiff brought suit against defendants, averring an unlawful and successful conspiracy to injure him in his business, and to interfere with the course of trade generally, to the injury of the public; that the conspiracy was carried out by a refusal to sell to him building materials themselves, and by threats and intimidation preventing other dealers from doing so. Under the instructions of the court upon the evidence, there was a verdict for plaintiff in the sum of $2,500 damages, which the court reduced to $1,500; then judgment, and from that defendants take this appeal.

The plaintiff's case is not one which appeals very strongly to a sense of justice. The mechanics of Pittsburgh, engaged in the different building trades, on 1st of May, 1891, demanded that eight hours should be computed as a day in payment of their wages. Their right to do this is clear. It is one of the indefeasible rights of a mechanic or laborer in this commonwealth to fix such value on his services as he sees proper, and, under the constitution, there is no power lodged anywhere to compel him to work for less than he chooses to accept. But in this case the workmen went further; they agreed that no one of them would work for less than the demand, and by all lawful means, such as reasoning and persuasion, they would prevent other workmen from working for less. Their right to do this is also clear. At common law, this last was a conspiracy and indictable, but under the acts of 1869, 1872, 1876 and 1891, employees, acting together by agreement, may, with few exceptions, lawfully do all those things which the common law declared a conspiracy. They are still forbidden, in the prosecution of a strike, preventing any one of their number who may desire to labor from doing so, by force or menace of harm to person or property; but the strike here was conducted throughout in an orderly, lawful manner. The employers, con-

tractors and others, engaged in building and furnishing supplies, members of the two associations already mentioned, to which these defendants belonged, refused to concede the demands of the workmen, and there then followed a prolonged and bitter contest. The members of the associations refused to furnish supplies to those engaged in the construction of any building where the contractor had conceded the eight hour day. This, as individual dealers, they had a clear right to do. They could sell and deliver their material to whom they pleased. But they also went further; they agreed among themselves that no member of the association would furnish supplies to those who were in favor of or had conceded the eight hour day, and that they would dissuade other dealers, not members of the associations, from furnishing building material to such contractors or retail dealers; to the extent of their power, this agreement was carried out. This clearly was combination, and the acts of assembly referred to do not, in terms, embrace employers; they only include within their express terms workmen; hence, it is argued by counsel for appellee, these defendants are subject to all the common law liability of conspirators in their attempts to resist the demand for increased wages; that is, there can be a combination among workmen to advance wages; but there can be no such combination of employers to resist the advance; that which by statute is permitted to the one side, the common law still denies to the other. If this position be well taken, we then have this inequality; the plaintiff who is aiding a combination, either directly or indirectly, intentionally or unintentionally, to advance wages, sues for damages members of another combination who resist the advance. Nor is there any difference in the character of the acts or means on both sides in furtherance of their purposes. The workmen will not work themselves, and they use persuasion and reason with their fellows to keep them from going to work until the demand is conceded; the employers will not sell to contractors who concede the demand, and they do their best to persuade others engaged in the same business from doing so.

Then, the element of real damage to plaintiff is absent; by far the larger number of dealers in the city and county were members of the combination which refused to sell; only the plaintiff and six others refused to enter the combination; the

result was that these seven had almost a monopoly of furnishing supplies to all builders who conceded the advance. Plaintiff admits in his own testimony that thereby his business and profits largely increased; in a few instances he paid more to wholesale dealers and put in more time buying than he would have done if the associations had not interfered with those who sold him; but it is not denied that, as a result of the combination, he was individually a large gainer. True, he avers that, if defendants had gone no further than to refuse to sell themselves, he would have made a great deal more money; that is, he did not make as large a sum as he would have made if they had not dissuaded others, not members of the association, from selling to him; but that, by the fact of the combinations and strike, he was richer at the end than when they commenced, is not questioned.

We have then these facts, somewhat peculiar in the administration of justice: A plaintiff suing and recovering damages for an alleged unlawful act, of which he himself, in so far as he aided the workmen's combination, is also guilty, and both acts springing from the same source, a contest between employers and employed as to the price of daily wages; and then the further fact, that this contest, instead of damaging him, resulted largely to his profit.

We assume, so far as concerns defendants, if their agreement was unlawful, or if lawful, it was carried out by unlawful acts to the damage of plaintiff, the judgment should stand. All the authorities of this state go to show that while the act of an individual may not be unlawful, yet the same act, when committed by a combination of two or more, may be unlawful, and therefore be actionable. A dictum of Lord Denman, in R. v. Seward, 1 A. & E. 711, gives this definition of a conspiracy: " It is either a combination to procure an unlawful object, or to procure a lawful object by unlawful means." This leaves still undetermined the meaning to be given the words lawful and unlawful, in their connection in the antithesis. An agreement may be unlawful in the sense that the law will not aid in its enforcement, or recognize it as binding upon those who have made it, yet not unlawful in the sense that it will punish those who are parties to it, either criminally or by a verdict in damages. Lord Denman is reported to have said afterwards in R.

v. Heck, 9 A. & E. 690, that his definition was not very correct. See note to sec. 2291, Wharton's Criminal Law.

It is conceded, however, in the case in hand, any one of defendants, acting for himself, had a right to refuse to sell to those favoring the eight hour day, and so, acting for himself, had the right to dissuade others from selling. If the act were unlawful at all, it was because of the combination of a number. GIBSON, J., in Com. v. Carlisle, Brightly's R. 39 says: " Where the act is lawful for the individual, it can be the subject of conspiracy when done in concert, only where there is a direct intention that injury shall result from it, or where the object is to benefit the conspirators to the prejudice of the public or the oppression of individuals, and where such prejudice or oppression is the natural and necessary consequence."

In the same case it is held: " A combination is criminal, wherever the act to be done has a necessary tendency to prejudice the public, or to oppress individuals by unjustly subjecting them to the power of the confederacy, and giving effect to the purposes of the latter, whether of extortion or mischief. According to this view of the law, a combination of employers to depress the wages of journeymen below what they would be if there was no recurrence to artificial means, on either side, is criminal." This case puts the law against the combination in as strong terms, if not stronger, than any others of our own state. The significant qualification of the general principle, as mentioned in the last three lines, will be noticed: " if there was no recurrence to artificial means, on either side." The prejudice to the public is the use of artificial means to affect prices whereby the public suffers. A combination of stock brokers to corner a stock, of farmers to raise the price of grain, of manufacturers to raise the price of their product, of employers to reduce the price of labor, of workmen to raise the price, were at the date of that decision, at common law, all conspiracies. The fixed theory of courts and legislators then was, that the price of everything ought to be, and in the absence of combination necessarily would be, regulated by supply and demand. The first to deny the justice of this theory, and to break away from it, was labor, and this was soon followed by the legislation already noticed, relieving workmen from the penalties of what, for more than a century, had been declared unlawful combinations, or conspira-

cies. Wages, it was argued, should be fixed by the fair proportion labor had contributed in production; the market price, determined by supply and demand, might or might not be fair wages, often was not, and as long as workmen were not free by combination to insist on their right to fair wages, oppression by capital, or, which is the same thing, by their employers, followed. It is not our business to pass on the soundness of the theories which prompt the enactment of statutes. One thing, however, is clear; the moment the legislature relieved one and by far the larger number of the citizens of the commonwealth from the common law prohibitions against combinations to raise the price of labor and by a combination the price was raised, down went the foundation on which common law conspiracy was based, as to that particular subject. Before any legislation on the question, it was held that a combination of workmen to raise the price of labor, or of employers to depress it, was unlawful, because such combination interfered with the price which would otherwise be regulated by supply and demand; this interference was in restraint of trade or business, and prejudicial to the public at large. Such combination made an artificial price; workmen, by reason of the combination, were not willing to work for what otherwise they would accept; employers would not pay what otherwise they would consider fair wages. Supply and demand consist in the amount of labor for sale and the needs of the employer who buys. If more men offer to sell labor than are needed, the price goes down and the employer buys cheap; if fewer than required offer, the price goes up and he buys dear; as every seller and buyer is free to bargain for himself, the price is regulated solely by supply and demand. On this reasoning was founded common law conspiracy in this class of cases. But, in this case, the workmen, without regard to the supply of labor or the demand for it, agree upon what in their judgment is a fair price, and then combine in a demand for payment of that price; when refused, in pursuance of the combination, they quit work, and agree not to work until the demand is conceded; further, they agree by lawful means to prevent all others, not members of the combination, from going to work until the employers agree to pay the price fixed by the combination. And this, as long as no force was used or menaces to person or property, they had a lawful right to do. And so far

as is known to us, the price demanded by them may have been a fair one. But it is nonsense to say that this was a price fixed by supply and demand; it was fixed by a combination of workmen on their combined judgment as to its fairness; and, that the supply might not lessen it, they combined to prevent all other workmen in the market from accepting less. Then followed the combination of employers, not to lower the wages theretofore paid, but to resist the demand of a combination for an advance; not to resist an advance which would naturally follow a limited supply in the market, for the supply, so far as the workmen belonging to the combination was concerned, was by combination wholly withdrawn, and as to workmen other than members, to the extent of their power, they kept them out of the market; by artificial means, the market supply was almost wholly cut off. The combination of the employers, then, was not to interfere with the price of labor as determined by the common law theory, but to defend themselves against a demand made altogether regardless of the price, as regulated by the supply. The element of an unlawful combination to restrain trade because of greed of profit to themselves, or of malice toward plaintiff or others is lacking, and this is the essential element on which are founded all decisions as to common law conspiracy in this class of cases. And however unchanged may be the law as to combinations of employers to interfere with wages, where such combinations take the initiative, they certainly do not depress a market price when they combine to resist a combination to artificially advance price.

" The reason of the law is the life of the law," and, as given in the cases cited by appellee, irresistibly impels to the conclusion that the combination here was not unlawful; a conclusion which is clearly indicated in Com. v. Carlisle, supra, that it would not be unlawful, if there was first recurrence to artificial means by workmen to raise the market price. Here, the first step provocative of a combination by the employers, was an attempt by lawful, artificial means on part of the workmen to control the supply of labor, preparatory to a demand for an advance.

Nor does the fact that the appellee was not a workman or a member of any of the unions of workmen, put him in any better attitude than if he were. He undertook for his own profit

to aid the cause of the workmen; his right so to do was unquestionable. But, if the employers by a lawful combination could limit his ability so to do, they did not make themselves answerable in damages to him for the consequences of a lawful act.

The case of Morris Run Coal Co. v. Barclay Coal Co., 68 Pa. 173, is not in point; it was the attempt to enforce the collection of a draft given by one member of a combination, formed to raise the price of coal, to another, in consideration of certain stipulations in the agreement. It was held that the combination, being in restraint of trade, was unlawful, and, as the draft was given in pursuance of the unlawful contract, it also was tainted with the illegality, and there could be no recovery.

But, if the agreement itself were not unlawful, were the methods to carry it out unlawful? If the employers' combination here had used illegal methods or means to prevent other dealers from selling supplies to plaintiff, the conspiracy might still have been found to exist. The threats referred to, although what are usually termed threats, were not so in a legal sense. To have said they would inflict bodily harm on other dealers, or villify them in the newspapers, or bring on them social ostracism, or similar declarations, these the law would have deemed threats, for they may deter a man of ordinary courage from the prosecution of his business in a way which accords with his own notions; but to say, and even that is inferential from the correspondence, that if they continued to sell to plaintiff the members of the association would not buy from them, is not a threat. It does not interfere with the dealer's free choice; it may have prompted him to a somewhat sordid calculation; he may have considered which custom was most profitable, and have acted accordingly; but this was not such coercion and threats as constituted the acts of the combination unlawful: Rodgers v. Duff, 13 Moore, P. C. 209; Bowen v. Matheson, 14 Allen, 499; Bohn Manufacturing Co. v. Hollis et al., Supreme Court of Minnesota, manuscript opinion, not yet reported [55 N. W. R. 1119].

On the main question, the case last cited goes further than we are called upon to go, as yet, in this state. It holds that what is not unlawful when done by an individual cannot be unlawful when done by many, and therefore the combination

not to deal with those who broke the rules of the association was not a conspiracy.   For this, a number of cases from other states as well as from England are cited.   But the law in this state has heretofore been determined otherwise from a very early day by an unbroken line of decisions which here call for no qualification ; for, so far as concerns the facts of this case, the legislature has so changed the law as to render these decisions inapplicable.   We concede, however, that the decisions of other courts are by no means uniform.   Mr. Wright, in his work on the Law of Criminal Conspiracies and Agreements (London, 1873), says : "It is conceived, that, on a review of all the decisions, there is a great preponderance of authority in favor of the proposition that, as a rule, an agreement or combination is not criminal, unless it be for acts or omissions, whether as ends or means, which would be criminal apart from agreement."

Logically, the same rule would apply, as was held in Bohn Manufacturing Co. v. Hollis, to combinations which, although not criminal, are alleged to be unlawful.

But without regard to whether the general rule be settled by the weight of authority, as claimed by appellants, we hold here that this combination was not unlawful, because : 1. It was not made to lower the price of wages as regulated by the supply and demand, but to resist an artificial price made by a combination which by statute was not unlawful.   2. The methods adopted to further the objects of the combination were not unlawful.

Another point has been most earnestly pressed upon our consideration by counsel for appellants.   It is argued that, under our declaration of rights, either the acts of assembly of 1869, 1872, 1876 and 1891, exempting employees from the penalties of unlawful combination to fix the price of labor are void, because, by their terms they embrace only a particular class of citizens of the commonwealth, or their scope must be enlarged beyond the express terms of these acts so as to include within their protection all those interested in the same subject of legislation.   It is argued that it is not within the power of the legislature to declare some citizens innocent of any offence against the law, for the very same act, which, when committed by some others in the same business, the law will still hold to be crimi-

nal; that what the statute declares is not conspiracy in one case cannot, under the law, be conspiracy in the other; and therefore in every contest of this kind between workmen and employers, the statute, if not void, must, at least, be held to operate equally to the exemption of all citizens interested in the subject affected by the combination; if there be nothing criminal in a combination to artificially raise wages, there can be nothing criminal in an employers' combination to resist the advance or to artificially depress them.

This question is not in the case, in the view we have taken of the facts. We are at all times averse to passing on questions, the answers to which are not necessary to a decision of the case immediately before us, much less are we inclined to discuss and decide questions involving the constitutional power of a co-ordinate branch of the government. For this reason we refrain from a consideration of the able argument of counsel for appellant on this point.

The refusal of the court below to affirm appellant's seventh prayer for instructions, that, " Under all the evidence the verdict must be for defendants," was error, and, being here assigned for error, the appeal is sustained and judgment reversed.