## Philadelphia Record Co. v. Curtis-Martin Newspapers, Inc., et al., Appellants.

Argued September 29, 1931. Before WALLING, SIMP-
SON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*Ralph B. Evans*, with him *F. Rogers Donahue*, for ap-
pellants.—The action of defendants was prompted by a
legitimate desire to protect their business from unfair
competition of plaintiff, and not to injure plaintiff in the
legitimate pursuit of its business: Cote v. Murphy, 159
Pa. 420; Miller v. Pub. Co., 266 Pa. 533; Dagostino v.
Rogers, 68 Pa. Superior Ct. 284; Pictorial Review v.
Pub. Co., 255 Fed. 206; Journal of Commerce v. Trib-
une, 286 Fed. 111.

*Charles Edwin Fox*, of *Fox, Rothschild, O'Brien &
Frankel*, for appellee.—The combination of two corpora-
tions for the purpose of refusing to deal with independ-
ent vendors of newspapers because such vendors sell
newspapers of a third corporation, is illegal: Morris

Run Coal Co. v. Barclay, 68 Pa. 173; Ballantine v. Cummings, 220 Pa. 621; Purvis v. United Brotherhood, 214 Pa. 348; Patterson v. Trades Council, 11 Pa. Dist. R. 500; York Mfg. Co. v. Oberdick, 10 Pa. Dist. R. 463; Arbour v. Trade Assn., 44 Pa. Superior Ct. 240.

Offers of financial inducement were illegal: Brace Bros. v. Evans, 5 Pa. C. C. R. 163; Grenada Lumber Co. v. Mississippi, 217 U. S. 434; Eastern States Retail Dealers Assn. v. United States, 234 U. S. 600.

*L. Stauffer Oliver,* for Oliver, Mancill & Deeter, appellees, Newsboys' Protective Association.—The newsboys, as such, are entitled to the relief granted by the court below: Patterson & Co. v. Trades Council, 11 Pa. Dist. R. 500.

OPINION BY MR. JUSTICE WALLING, December 4, 1931:

This proceeding presents a situation somewhat unusual, indeed without even a close parallel, so far as we have been able to discover, in the decisions of any court of final appeal. The two defendant newspapers were compelled by a decree of the court below, which our order superseded, to sell a certain edition of their newspapers, known as the "bulldog" edition, to a specified group of newspaper venders, with whom they had no contractual relation, for resale by them. Inasmuch as the publication and sale of newspapers is a private enterprise and corporations carrying on such a business are not in any sense public service corporations (Journal of Commerce Pub. Co. v. Tribune Co. et al., 286 Fed. 111), such an order challenges attention to discover legal warrant for its making. The bill was originally filed by the Philadelphia Record Company. Later, Harry Asher and others, representing the Newsboys' Protective Association, were permitted to intervene as parties plaintiff and these appeals by the defendants, are from a decree granting a preliminary injunction.

The plaintiff, Philadelphia Record Company, and the two defendants, Curtis-Martin Newspapers, Inc., and the Philadelphia Inquirer Company, publish morning newspapers in the City of Philadelphia, plaintiff the "Record," Curtis-Martin Company the "Ledger" and the other defendant the "Inquirer." All of them are newspapers of large circulation. They are all members of the association, country wide in extent, called the Associated Press, one of whose rules is that morning newspapers shall not be offered for sale to the public before nine o'clock P. M. of the day preceding the date of the paper. The editions circulated the night before the paper's date are known as "bulldogs." The Ledger has observed this rule and does not offer its "bulldog" until 10 P. M. Neither the Record nor the Inquirer has complied with the rule and there has been rivalry between them in getting their respective papers first on the streets for sale, the testimony indicating that both papers have appeared before the designated hour. Considerable numbers of all three papers were sold up to a certain date by the same group of newsboys, about two hundred in number. This way of circulating their journals became unsatisfactory to the officials of the Ledger and the Inquirer and they determined to recruit their own sales force, which they proceeded to do. When it was organized, they refused to sell their newspapers to the newsboys who sold the Record and who had determined that they would continue to sell that journal. The decree of the court below commands them to continue to sell their papers to this group.

This order is one which it was beyond the power of the court to make. The chancellor based his decree on a finding that the acts of the two defendants in refusing to sell their papers to the original group of newsboys was an unlawful combination and constituted a monopoly. The defendants were within their rights in creating their own sales organizations so long as they did not interfere with the sale of the Record. The original

group of newsboys continued to sell that paper. So far as creating a monopoly is concerned, it is a little difficult to see how a monopoly could be created in the sale of a single edition of a newspaper, indeed, in their sale generally. Since the defendants organized their new sales force there are more Records sold daily than before by several thousand copies. Moreover, one-half of the "bulldog" editions of each of the three papers was sold at newstands and not by the boys. The original organization of newsboys had no contractual relation with the defendants; individually or as a group they could discontinue selling their papers at any time and they have no rights against the defendants which equity could safeguard. In the absence of a contract to sell them to particular individuals, defendants can sell their papers to whomsoever they please. The newsboys were not employees of defendants; they were independent vendors.

The two cases cited by the court as warrant for its decree do not at all support its sweeping order. One of them, Finnegan v. Butler, 112 N. Y. Misc. Rep. 280, 182 N. Y. Supp. 671, is the decision of a trial court in the State of New York on a motion for an injunction pendente lite and the proceeding was brought under the General Business Law of the State of New York, which has no counterpart in our Commonwealth. The other, Peekskill Theatre, Inc., v. Advance Theatrical Co., 206 App. Div. (N. Y.) 138, dealt with the breaking of contracts to supply the plaintiff with moving picture films through the procurement and inducement of the defendants, who were interested in rival theaters, to the ruin of the plaintiff's business. On its facts it has no relation to the case in hand. Miller v. Post Publishing Co., 266 Pa. 533, in some aspects bears on the case before us. There, the plaintiff had for many years handled all of the newspapers published in the City of Pittsburgh. For some reasons some of the newspapers refused to furnish their papers to the plaintiff and engaged an-

other person in his place as distributing agent. The plaintiff thereupon brought an action of trespass, alleging conspiracy to ruin and destroy his business. It was there said (page 534) : "Stripped of the allegations of conspiracy and intention to wrong the plaintiff, the plaintiff's contention is that he was employed by each of four companies publishing newspapers to distribute their papers in a certain territory, and that they chose to discontinue his employment as such. We are unable to see why they did not have a right to do so. That they might have done so acting separately, we understand is admitted by the plaintiff. If the act was unlawful at all it was because of the combination of a number. 'Where the act is lawful for the individual it can be the subject of conspiracy when done in concert only where there is a direct intention that injury shall result from it, or where the object is to benefit the conspirators to the prejudice of the public or the oppression of individuals and where such prejudice or oppression is the natural and necessary consequence.' ...... It no doubt was the object of the defendants in discharging the plaintiff to benefit themselves, but it was not to the prejudice of the public and we are unable to see how it was to the oppression of the plaintiff." In Cote v. Murphy et al., 159 Pa. 420, a combination of dealers in lumber not to sell to any builder who yielded to the demands of workmen then on a strike was held lawful.

In effect what the court did by its decree was to write a contract between the newsboys and each of the defendants, terminable at the option of the newsboys but not at the option of the defendants, requiring the latter to continue to sell to the newsboys as they had done prior to organizing their own sales force. The court had no power to do this.

Furthermore, the decree appealed from orders the defendants to sell the "bulldog" edition of their papers to a certain group of boys; hence, it is a mandatory preliminary injunction. This a court never grants except

to prevent irreparable injury where the rights of the parties are entirely clear (Drum et al. v. Kinkelacker, 262 Pa. 392; Fredericks et al. v. Huber et al., 180 Pa. 572; Leisenring v. Penna. Lighting Co., 59 Pa. Superior Ct. 202; Taylor v. Sauer, 40 Pa. Superior Ct. 229), which they are not in the instant case.

It is not necessary to extend this discussion for, at this preliminary state, we consider only whether the lower court had reasonable grounds for its action (Winston et al. v. Ladner et al., 264 Pa. 548; Holden v. Llewellyn, 262 Pa. 400; Hoffman v. Howell, 242 Pa. 112; Gemmell et al. v. Fox et al., 241 Pa. 146), and whether the rules of law relied upon are clearly inapplicable: Lesher v. Gassner Co., 285 Pa. 43; Com. v. Katz, 281 Pa. 287. Where the lower court bases its action, in such case, on a fundamental error of law, as appears in the case at bar, it will be corrected on appeal: Kaufman v. Phila., 293 Pa. 270; Nat. Auto Serv., Inc., v. Barfod, 288 Pa. 227; Casinghead Gas Co. v. Osborn, 269 Pa. 395; Keys v. Uniontown R. St. Ry. Co., 236 Pa. 612. Sufficient consideration in such case will be given to determine that question.

The decree of the court below, granting the preliminary injunction, is reversed; costs to abide the event of the suit.