## Dominic Maurer, Inc., v. Berks Products Corp. et al.

*Mark C. McQuillen,* for plaintiff.

*Edward Davis* and *Albert S. Readinger,* for defendant union.

*Edgar S. Richardson, John A. Moss,* and *Zieber & Snyder,* for defendant corporations.

*George Eves,* for plaintiff's employes, intervenors.

SHANAMAN, J., October 6, 1944.—Plaintiff is a general contractor. Defendants comprise (1) some business concerns who have formerly supplied plaintiff with needed materials and services, (2) some labor unions, and (3) some business agents of the unions. The unions endeavored for a number of years to persuade plaintiff's employes to unionize themselves, but without success. The plaintiff's employes, left perfectly free by their employer to decide either way, have preferred not to affiliate themselves with organized labor. So far as the evidence goes their preference appears to have been unanimous. Defendants concede that plaintiff has afforded a reasonable opportunity for the unions to approach and convince its employes. The business agents have also approached plaintiff and sought to persuade its president to execute a closed-shop agree-

ment with the unions. Plaintiff has declined to do this against the wishes of the employes. Latterly, a third tactic was adopted, out of which arises the present suit, in which plaintiff's employes have been permitted to intervene.

The local building trades council is composed of delegates from the unions. It frequently discussed the situation, and regarded plaintiff as unfair. As a result, the teamsters' union, or rather its business agent speaking for it, and presumably with its approval, approached those of defendants which are business concerns, and informed them that after a certain date the members of the union would not haul any goods sold to plaintiff to the site of any job of plaintiff's for use thereon. These business concerns had closed-shop contracts with the teamsters' union by the provisions of which their employes were not bound to haul goods to or for anyone who had labor trouble. The business firms accordingly have not since the notice delivered any goods or service to plaintiff. There is evidence that prior to the notice their transactions with plaintiff had run into large sums of money and that the cessation of deliveries by defendant business concerns has increased plaintiff's cost and added to its inconvenience in performing a number of its contracts.

Plaintiff seeks an injunction and also at once a preliminary injunction. It avers a conspiracy and an agreement to restrain and interfere with its business and its conduct thereof, and avers further that by means of the conspiracy defendants are attempting unlawfully to coerce it into coercing its employes to join the various trade unions. Plaintiff's amended bill also avers an attempt by force to coerce plaintiff's employes to join the unions in their respective trades, and avers the occurrence of crimes of violence and disturbances of the peace. The averments of violence were added in the amended bill. Plaintiff does not, however, contend that such violence is now taking place or is threatened or likely to occur. The averment was added

apparently to conform the pleadings to some testimony of past occurrences. The amended bill, like the original one, prays only that the alleged conspiracy and unlawful combination be restrained. The gist of the case is simply: Is it unlawful for the members of a trade union, none of whom is employed by a certain nonunion shop in their locality, to attempt to accomplish their object of unionizing that shop, the employes of which do not wish to organize, by going to their own employers with whom they have closed-shop contracts, and in accordance with the terms of such contracts refusing their aid to such employers in any dealings with the nonunion shop? The issue appears to be so limited because the testimony is express and undisputed that plaintiff had no contracts with the business firms involved. It had extensive dealings with them, but only upon orders from time to time given and accepted. Upon a brief oral notice received by the business firms from the teamsters' business agent that at a certain time their employes, members of the teamsters' union, would cease to deliver to plaintiff who was pronounced unfair, the business firms simply decided at once to cease dealing with plaintiff rather than risk labor strife in their own business.

We shall first consider the position of the business defendants against whom a preliminary injunction is sought.

"A conspiracy must be proven by substantive facts, not by disconnected circumstances, any one of which, or all of which are more consistent, or just as consistent, with a lawful purpose as with an unlawful undertaking": Ballantine v. Cummings, 220 Pa. 621, 632.

"When conspiracy is alleged, it must be proven by full, clear and satisfactory evidence. When plaintiff also relies on subsequent acts to establish the conspiracy, these acts must be such as to clearly indicate the prior collusive combination and fraudulent purpose, not slight circumstances of suspicion, and these

subsequent acts must be such as to warrant the belief and justify the conclusion that the subsequent acts were done in furtherance of the unlawful combination and in pursuance of the scheme to wreck the business and cause the bankruptcy": Novic et al. v. Fenics et al., 337 Pa. 529, 535.

To establish a conspiracy by the business concerns, we have, unless the closed-shop contract is itself a conspiracy, nothing further than their respective business decisions to cease at least temporarily their hitherto presumably profitable dealings with plaintiff. It is as probable that these decisions were arrived at, like their other business decisions, upon a view of circumstances and upon consideration of the welfare of the business as that they were the product of a concerted purpose between the business defendants and the teamsters' union. It is reasonably likely that the business defendants were governed and controlled by the circumstances and that they did not scheme and contrive with Mr. Mack, the teamsters' business agent, a course of action. To prove a conspiracy between two persons more must be shown than that one acted in accordance with the desires of the other, "there must be a preconceived plan and unity of design and purpose, for the common design is of the essence of the conspiracy": 15 C. J. S., par. 2, p. 997. It seems clear, therefore, that no injunction ought preliminarily to issue against the business defendants. As to one of these defendants, we note that its agreement had expired, was in process of a renegotiation nearly completed, and was apparently treated by the parties thereto as substantially in effect.

It remains to consider the position of the other defendants. An agreement by members of the teamsters' union to carry no goods sold by their employers, the defendant business corporations, to plaintiff, doubtless existed, and if not actually first suggested by the building trades council was presumably known to some of its delegates and favored by them. The agent of the teamsters' union, Mr. Mack, in accordance with that

agreement and the provision of the closed-shop contracts, notified the defendant business firms of the intention of their teamster employes. Do these facts constitute an unlawful conspiracy?

"Employees who in concert refuse to work on or handle goods produced by, or destined for, or to be furnished on behalf of, a third person whose employees are not members of a labor union satisfactory to the actors or are engaged in a labor dispute with him for a proper object are not liable to the employer or to the third person if the actors have a substantial interest in the third person's employment relation": Restatement of the Law of Torts, vol. IV, ch. 38, sec. 802.

Section 804 of the same chapter sets forth six factors which may singly or together be important in determining whether the actors have a substantial interest under the rules stated in section 802. Much evidence may be expected to exist which may subsequently be offered upon these points after answer filed. Prima facie some degree of similarity exists between the occupation of the teamsters and at least of some of plaintiff's employes. Both plaintiff and defendant firms are either in the building industry or connected with it. In Cote v. Murphy et al., 159 Pa. 420, plaintiff was a dealer in building materials. A number of builders, confronted with a strike of carpenters, masons, and bricklayers, combined and agreed to sell no raw materials, and to persuade other dealers to sell no raw materials, to any builder who granted the demands of the strikers. As a result, plaintiff did not succeed in purchasing lumber and other material from certain wholesale dealers. Plaintiff brought suit for damages against these dealers who had so combined and had been instrumental in shutting off dealings between plaintiff and the wholesalers. The Supreme Court (p. 431), in reversing a judgment for plaintiff, held that even if defendants said to the wholesalers that "if they continued to sell to plaintiff the members of the association would not buy from them" such language "is not

a threat. It does not interfere with the dealer's free choice; it may have prompted him to a somewhat sordid calculation; he may have considered which custom was most profitable, and have acted accordingly; but this was not such coercion and threats as constituted the facts of the combination unlawful."

" 'Where the act is lawful for the individual, it can be the subject of conspiracy when done in concert, only where there is a direct intention that injury shall result from it, or where the object is to benefit the conspirators to the prejudice of the public or the oppresion of individuals, and where such prejudice or oppression is the natural and necessary consequence' ": Gibson, J., cited with approval in Cote v. Murphy et al., 159 Pa. 420, 428; Miller v. Post Publishing Co. et al., 266 Pa. 533, 535; Philadelphia Record Co. v. Curtis-Martin Newspapers, Inc., et al., 305 Pa. 372, 377, accord.

In Kirmse et al. v. Adler et al., 311 Pa. 78, the Supreme Court, in reversing a decree of injunction, said (p. 85) :

"Appellants do not deny their acts were calculated to compel the theatre men to employ men at the union scale by injuring the patronage. The primary aim was the protection of the employment of their members at the union rate of wage, while the means employed involved as a secondary purpose the injury of appellee's patronage. We have held such acts lawful. . . . 'A peaceful effort, individually, collectively or concertedly, to bring about a *cessation of labor* in order to enforce a demand for betterment of wage or living conditions, even though the indirect purpose is accomplished, is not unlawful.

" 'While the right to form combinations, and through a strike to exert means to prevent men from working, may be lawful, it remains so only as long as the means employed are lawful.' If the words 'cessation of labor' in this quotation are removed and 'cessation of patronage' are substituted, it is apparent that the question in this case narrows down to whether the means here

employed are lawful. Unless the means employed are unlawful, the motive for the acts is immaterial. . . .

"There has been no attempt by respondents to induce complainant's present employees to cease work as punishment to the owner, or to force men to join the union. It may have been, and no doubt was, the purpose of the union, through the acts complained of, to secure work for union men even though it resulted in the discharge of nonunion men."

The court said (p. 83):

"Since no other body has been created to consider these matters, the courts must decide them. This court, however, in considering them has never impressed the strong arm of an equitable injunction unless the circumstances imperatively required it. There must be present evidence showing either disorder, coercion, intimidation, violence, boycott, or threats or acts looking to the same end, no matter how those forces may be set in motion or brought to bear on the parties; unless physical violence, fear or molestation, or breach of the peace follow, or are likely to follow these acts, or property rights are unlawfully damaged, our courts have always refused to act."

In Alliance Auto Service, Inc., v. Cohen et al., 341 Pa. 283 (1941), defendants, a union of teamsters, having a labor dispute with Petrol Corporation, a wholesale oil dealer, picketed plaintiff with whom they had no dispute but who sold at retail the products of Petrol Corporation. The Supreme Court reversed a decree of injunction. In Friedman v. Blumberg et al., 342 Pa. 387, plaintiff, a glazier, did his own work aided by his wife. Occasionally, perhaps a day or two a month, he called in a helper. Defendants, a labor union, picketed his place of business with written signs bearing the statement that he was unfair to organized labor. There was no testimony that either plaintiff's wife or his occasional helper had any labor dispute with him. The Supreme Court, on appeal by defendant labor organization, reversed a decree of injunction. Defendants cite also Lella et al. v. Rubel Corp. et al., 25

N. Y. S. (2d) 548. In that case plaintiffs sought an injunction against a union and certain unionized coal companies, alleging that the coal companies had refused to sell coal to plaintiffs, because they were not unionized. The court refused a preliminary injunction but retained the bill.

Complainants cite Flashner v. Amalgamated Meat Cutters & Butcher Workmen of North America, Local 195, etc., 37 D. & C. 337. In that case the picketing which was enjoined had been accompanied by physical prevention of access to complainant's store, by taunting, threatening, and reviling language, and by disorderly and unsanitary practices. The facts were thus quite different from the present case. Plaintiff cites and strongly relies upon the case of Erdman v. Mitchell, 207 Pa. 79, and cites as well a number of cases from other jurisdictions. In 1932, the Supreme Court of Florida pointed out that, notwithstanding the wealth of authority on the subject, the law as to boycotting and picketing is in a confused state. Since then, the confusion has hardly been lessened. A decision of 25 years ago, such as Auburn Draying Co. v. Wardell et al., 227 N. Y. 1, 124 N. E. 97 (1919), cited by plaintiff, would hardly be decided today as it was then. See Goldfinger v. Feintuch, 276 N. Y. 281, 11 N. E. (2d) 910, 116 A. L. R. 477 (1937). For a vivid Pennsylvania instance of change and alteration, or, if one prefer, of a new emphasis upon an old but formerly, it must seem, overlooked principle, one may compare such a decision as Erdman v. Mitchell, 207 Pa. 79 (1903), with Alliance Auto Service, Inc., v. Cohen et al., 341 Pa. 283 (1941), and Friedman v. Blumberg et al., 342 Pa. 387 (1941), cited and discussed above. In the case of Friedman v. Blumberg, the Supreme Court said that it was "constrained to hold in view of the decisions of the Supreme Court of the United States . . . that, under the circumstances here shown, an injunction to restrain the picketing cannot be sustained". In the present case, likewise, the right of plaintiffs to

an injunction appears too uncertain under the authorities to be enforced, at least before defendants have been heard on answer and final hearing. Thus in Manhattan Steam Bakery, Inc., v. Schindler et al. (1937), 250 App. Div. 467, 294 N. Y. Supp. 783, 116 A. L. R. 509 (annotations), the so-called secondary boycott was permitted because of the definite industrial relation between the sale of plaintiff's products and the aims and objects of the defendant. In that case the union was permitted to boycott the dealers, as against the plaintiff baking concern, which employed nonunion drivers to deliver its products to the retail dealers.

An important distinguishing factor and objection to the issuance of an injunction, at least before trial upon due pleadings, consists in the existence in the present case of certain closed-shop agreements between the teamster defendants and the defendant firms. By virtue of those contracts, whereby the employers and their employes agree that only union men shall be employed, and that the employes may rightfully refuse to deliver services or materials to anyone with whom they have "labor trouble", the employers and the employes appear to have formed a more or less solid industrial unit in necessary opposition to nonunion enterprises. While the implicit hostility to nonunion industrial units may remain quiet or be appeased by profitable business relations between the nonunion enterprises and the unionized enterprises, such hostility may also become active upon occasion. The defendant firms have consented that the union shall judge and determine when such occasion has arisen. The situation that concerns us in the present litigation is therefore a natural outgrowth of the closed-shop contracts made between the defendant firms and their employes. This is not a case in which the union have gone to the wide public and have exercised a general harmful influence upon plaintiff's relations and position. On the contrary, the union has simply gone to its close coparties in the closed-shop agreements, to wit, the employers,

and has upon them exerted influence in accordance with their closed-shop agreement. In short, the defendant firms and their employe defendants have simply decided not to deal with plaintiff. This statement is apparently true also of the Ready Mixed Concrete Company, defendant, whose closed-shop agreement lacked the clause as to permitted refusal of teamsters to haul to a "labor trouble" job, but who, equally with the other business firm defendants, coöperated with the union, and did not avail itself of the arbitration provided in its agreement. A closed-shop contract is not only legal, but is contemplated and recognized and protected by the law. Incidents naturally and necessarily growing out of closed-shop contracts, while possibly enjoinable if found unlawful, should not be enjoined before defendants have had an opportunity to answer and defend, except in a clear case of violated right and imminent injury uncompensable by pecuniary damages. In Zaat v. Building Trades Council et al., 172 Wash. 445, 20 P. (2d) 589, 116 A. L. R. 510 (annotation) (1933), the court overruled the employer's contention that a union threatened to boycott a dealer from whom the employer purchased equipment, it not appearing that the dealer complained.

That the present litigation is important to all parties is indicated by the number of supplemental briefs which have been handed to the chancellor by counsel, even up to within a few days of the date of the present opinion. We have given careful consideration to all the arguments and authorities brought to our attention, and we are convinced that especially under the more recent authorities the right of complainants is by no means so clear as to warrant an injunction at this stage. We shall, however, retain the bill and the case may proceed in the usual way.

And now, to wit, October 6, 1944, plaintiff's motion for a preliminary injunction is overruled. Defendants' motion for dismissal of the bill is overruled. Exceptions to these rulings are allowed.