## Green *et al. versus* The Ashland Iron Company.

1. Title to land cannot be tried, but may incidentally arise, and be heard in a transitory action.

2. The mere assertion of title is nothing; but when it appears that it is a trial of title, replevin will not lie.

3. The plaintiffs having a mining lease, raised ore, which, being unwashed, was mixed with the earth, leaving it on the bank of the premises. *Held,* that replevin would lie for its possession unwashed, notwithstanding the adhesion of the earth.

4. A foreign corporation, prohibited from holding real estate in this Commonwealth, brought·an action of replevin for ore taken out by them in this state under 'a mining lease: subsequently, an act was passed authorizing them to sue in this state, and providing that any pending action by them should be treated as instituted under the act. *Held,* that the action could be maintained.

5. There is a distinction between a disability of *person,* which prevents a party from maintaining an action and a defect of title which prevents his recovery.

May 7th 1869.　Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ.　READ, J., absent.

Error to the Court of Common Pleas of *Adams county:* No. 77, to May Term 1869.

To August Term 1866 of the Court of Common Pleas of Adams county, The Ashland Iron Company of Baltimore county brought an action of replevin against John Green and John Vanhyning and Enoch Lefever, for 450 tons of unwashed iron ore of the value of $1000. Green and Vanhyning claimed property, and gave bond to the sheriff: Lefever pleaded "Non cepit," Green and Vanhyning pleaded "Property." On the trial, August 18th 1868, before Fisher, P. J., the plaintiffs gavè evidence of their incorporation March 15th 1853, by the Circuit Court of Baltimore county, Maryland; also, their incorporation February 13th 1867, with increased powers by the legislature of Maryland; also, Act of April 10th 1867, Pamph. L. 1088, authorizing the plaintiffs "to purchase, hold and dispose of property real, personal and mixed, in fee simple or leasehold in York county or its adjoining counties," &c.; also, Act of April 14th 1868, Pamph. L. 1068, which made the plaintiff capable of-suing and being sued in any of the courts of this Commonwealth, and provides "that any action instituted prior to the passage of this act, to which said company is a party and which is still·pending, shall be treated as instituted under the provisions of this act." They further gave in evidence the following:

"MEMORANDUM OF AGREEMENT.

"3000 tons first year.

"4000 tons per year during the time the Ashland Co. keep the lease. No other person or persons to raise ore at said bank during

12 P. F. SMITH—7

[Green *v.* Ashland Iron Co.]

the lease. To pay the rent quarterly for all mined from bank. Should anthracite iron rise to average price of $28, the rent to be 50 cents. Ashland Co. to pay 45 cents per ton from this time until average price of iron is $28 per ton. Ashland Co. agree to put on cars 12,000 feet hemlock 3-in. stuff at Wrightsville or Goldsboro'. The rent to commence 1st of April next.

"Signed Feb. 3, 1859.          RICHARD GREEN, Agt.

ENOCH LEFEVER."

Green was manager of the plaintiffs and authorized to make the agreement.

The plaintiffs gave evidence of the mining of ore commencing in the spring of 1859, which was hauled out and remained on the bank ; it had to be washed or screened before it was fit to be used or shipped. The screening is to separate it from the dirt : it cannot always be screened when hauled out, being too wet : screened ore is as good as any. The mining continued until January 1865, when Lefever requested the miners to stop, as he had sold the bank, and said he had reserved the ore; he gave the plaintiff until September 1st 1865 to remove it. A miner informed Lefever that plaintiffs wanted the ore, and would wash it as soon as water could be got. Plaintiffs' hands continued to wash the ore till stopped by the cold weather in December. They commenced moving the unwashed ore July 1st 1866, and were stopped by an action of trespass July 27th. He gave evidence, also, that in December 1865 Green, one of the defendants, informed plaintiffs' hands that they would give them notice when they, the defendants, wanted the ore moved.

On cross-examination a witness of plaintiffs, one of their own hands, stated that there was time to remove the ore before September 1865, if they had sufficient hands and plenty of water ; that Lefever requested him frequently to go on and wash the ore. There was no interference by defendants until July 1866.

Plaintiffs gave in evidence letters between their agent, J. C. Clarke, and Lefever. One dated January 1st, 1866, from Clarke, saying : * * * " I directed Mr. Warfield to haul away the washed ore from the machine, then turn it around so as to be out of the way, of Mr. Green. As soon as the weather will permit I will send up our carpenter to move everything out of the way. As soon as we get our machine up we will wash out the screen ore. Hope this will be satisfactory. We do not give up our right to enter into the bank and take away therefrom the ore raised by us."

Lefever's answer, dated January 4th, 1866:—" I received your letter of the first, and it was all satisfactory to me, except the last sentence. * * Do you mean only to claim the ores that your men have already raised, or do you mean to say that you have the privilege of mining on my farm hereafter ? * * It is just and impor-

[Green v. Ashland Iron Co.]

tant for me to know. All the ore that your men raised prior to this date, I am willing you shall have."

Clarke's reply, January 9th 1866 :—" Your favor of 4th, duly to hand: In reply will say, we only claim the right to go upon, clean up and take the ore away which the Ash. Iron Co. has raised, all of which we hope to do before a great while. We do not claim the right to continue to raise ore upon your land, only to remove that we have raised. My letter of the 1st was only intended to convey the same claim as now stated."

There was evidence that the defendants were in possession of the premises and were working at the bank in the spring and summer of 1866, and Lefever in the presence of Clarke the plaintiffs' manager recognised the defendants' right to the possession. There was no evidence against Lefever. The plaintiffs having closed, the defendants offered in evidence an unstamped lease of the ore bank to themselves, to commence April 1st 1866, which on objection by the plaintiffs was rejected by the court.

The plaintiffs submitted these points :—

" 3. The agreement between the Ashland Iron Company and Lefever, being a lease from year to year, commenced with 1st of April 1859, and had no definite termination; it could be terminated only by either party giving to the other legal notice to terminate it, three months prior to the commencement of the succeeding year. If the jury find that no notice was given to the Ashland Iron Company prior to the 1st of January 1865, to terminate the lease on the 1st of April 1865, the company held over for another year from April 1st 1865, and if no legal notice was given to the Ashland Iron Company prior to January 1st 1866, to terminate the lease on the 1st of April 1866, the Ashland Iron Company was in legal possession of the ore at the time of the service of the writs of trespass and replevin, and is entitled to recover the value of the ore mined by them there at that time."

Answer: " The proposition of law, as stated in this point, is correct, unless the plaintiffs had abandoned their lease. Whether they had or had not, is for the jury to determine from the evidence."

" 4. Under the terms of the lease, the Ashland company were entitled to legal notice to terminate the tenancy, and there is no evidence that any such notice was ever communicated to the said company."

Answer: " This is correct. Whether the Ashland Iron Company had legal notice, is for the jury to determine from the evidence, subject to the direction of the court as to what constitutes legal notice." * * *

" 6. The ore mined by the Ashland Iron Company is personal property, and does not pass to Green & Vanhyning under any

[Green *v.* Ashland Iron Co.]

lease made with them; they have no legal claim to it, and Lefever having disclaimed property in it, the plaintiff is entitled to recover the value of the ore."

Answer: "The ore mined by the Ashland Iron Company, under the provisions of the lease of February 3d 1859, is personal property, and does not pass to Green & Vanhyning under any lease made by them, unless specially transferred to them by the party having property in it."

The defendants submitted these points:—

"4. The Ashland Company, under their agreement, had power to mine and take away ore, but had no right to remove the soil mixed with ore, and cannot maintain this action of replevin against the parties in possession for refusing to permit them to remove the unwashed ore, or for converting it to their own use."

Answer: "The facts stated in this point, if correct and in accordance with the facts proved in the case, will not prevent a recovery by the plaintiffs, if otherwise entitled to recover."

"5. The plaintiffs were a foreign corporation, having no legal existence in this state at the time this suit was instituted, and therefore cannot recover."

Answer: "The court reserve this point, and direct the jury, if they find for the plaintiffs, to find subject to the opinion of the court; whether the plaintiffs can maintain an action in this Commonwealth."

The court, after referring to the evidence, &c., charged: * * *

["It is contended that replevin will not lie for unwashed ore; but we think differently. If the plaintiffs mined it under their lease, they had a qualified property in the earth that surrounded it—the right to retain it for the purpose of washing out the ore, if they have not forfeited it.] * * * *

"It is contended, whatever may be the facts in relation to the notice to terminate the lease, that Mr. Lefever, before he leased to Green & Vanhyning, gave the Ashland Company time to remove the ore until the first of September following. If he did, the Ashland Company had the right to remove it until that time expired.

"It is also contended, that after Green & Vanhyning made an arrangement with Lefever to mine the banks, one of the members of the firm gave the Ashland Company time to remove the unwashed ore. If such an arrangement was made, the plaintiffs ought to have had a reasonable time given them to enter and remove the ore mined by them, before the defendants could remove it or use it themselves. If the defendants, Green & Vanhyning, or either of them, made such an arrangement with the Ashland Company, and did not allow a reasonable time to the Ashland Company to remove it, but removed it or used it themselves before the expiration of a reasonable time, they are

[Green v. Ashland Iron Co.]

liable to respond in damages to the plaintiffs for the value of any of the unwashed ore left by plaintiffs on the banks of the mine and used by the defendants. * * * * What would be a reasonable time, the jury will determine from the circumstances of the case."

The verdict was for the plaintiffs against Green and Vanhyning for $670,25 and in favor of Lefever.

Green and Vanhyning removed the case to the Supreme Court, and assigned for error the part of the charge enclosed in brackets and the answers to the points.

*R. G. McCreary*, for plaintiffs in error.—The soil containing the ore was part of the freehold, and replevin would not lie: Mather v. Trinity Church, 3 S. & R. 509; Powell v. Smith, 2 Watts 126; Overton v. Williston, 7 Casey 155; Davis v. Moss, 2 Wright 346; Snyder v. Vaux, 2 Rawle 427; Brown v. Caldwell, 10 S. & R. 114. A foreign corporation cannot hold land in this state: Act of April 26th 1855, sect. 5, Pamph. L. 329, Purd. 202, pl. 52. It is part of the plaintiff's case that he has violated the law; he cannot therefore recover: Swan v. Scott, 11 S. & R. 155; Thomas v. Brady, 10 Barr 164; Scott v. Duffy, 2 Harris 20. A corporation has no legal existence out of the sovereignty which created it: Allegheny Co. v. Pittsburgh & Cleveland R. R. Co., 1 P. F. Smith 228; Ohio & Mississippi R. R. v. Wheeler, 1 Black U. S. R. 286. The plaintiffs must recover on the strength of their own title: Reinheimer v. Hemingway, 11 Casey 432.

*D. Wills*, for defendants in error.—Replevin will lie for ore dug from a mine: Wilbraham v. Snow, 2 Saunders R. 47: Harlan v. Harlan, 3 Harris 507. Replevin lies for personal property in the possession of another without regard to the manner in which it was obtained: Herdic v. Young, 5 P. F. Smith 176. It will lie for ore mined by mistake on another's land: Forsyth v. Wells, 5 Wright 291; Moore v. Shenk, 3 Barr 19; McDonald v. Scaife, 1 Jones 385. Although a foreign corporation, the plaintiffs could maintain the action: Stewart v. U. S. Ins. Co., 9 Watts 126. The acts of 1867 and 1868, *supra*, remove any disability: Schenley v. Allegheny City, 12 Casey 29; Hepburn v. Curts, 7 Watts 300; Braddee v. Brownfield, 2 W. & S. 271; Biddle v. Starr, 9 Barr 461; Bleakney v. Bank, 17 S. &. R. 64; Turnpike Co. v. Com., 2 Watts 433; Underwood v. Lilly, 10 S. & R. 97; Tate v. Stooltzfoos, 16 S. & R. 35; Dewart v. Purdy, 5 Casey 113; Gault's Appeal, 9 Id. 94. The lease was from year to year: Bree v. Lees, 2 W. Black. 1171. Three months' notice before the end of the year was necessary to terminate it: Lesley v. Randolph, 4 Rawle 123; Bedford v. McElherron, 2 S. & R. *50; Brown v. Vanhorn,

[Green *v.* Ashland Iron Co.]

1 Binney 334 ; Fahnestock *v.* Faustenauer, 5 S. & R. 174 ; Thomas *v.* Wright, 9 Id. 87.

The opinion of the court was delivered, July 6th 1869, by

AGNEW, J.—It is undoubtedly true that the title to land cannot be tried and adjudicated in a transitory action : Mather *v.* Trinity Church, 3 S. & R. 509 ; Baker *v.* Howell, 6 S. & R. 476 ; Brown *v.* Caldwell, 10 S. & R. 114 ; Powell *v.* Smith, 2 Watts 126. But it is equally well settled that the title may incidentally arise and be heard in such an action : Wright *v.* Guier, 2 Watts 173 ; Elliott *v.* Powell, 10 Id. 454 ; Harlan *v.* Harlan, 3 Harris 509 ; Clement *v.* Wright, 4 Wright 250 ; Brewer *v.* Fleming, 1 P. F. Smith 102. As remarked by Judge Rogers in Harlan *v.* Harlan, p. 515, the mere assertion of title is nothing, the court looks to the substance, and when it appears in truth it is a trial of the title, then it is properly ruled that replevin is not the proper action. While it is true (Judge Strong remarks in Clement *v.* Wright, p. 254), that in actions of replevin or trover the title to real property cannot be directly tried and adjudicated upon, it is equally true that it may be incidentally brought into question, and may therefore be admitted in evidence. It is quite evident in this case that the title to the real estate on which the ore was mined was not in controversy. The ore in question was mined by the plaintiffs while in possession under an admitted lease. Lefever, the landlord, admitted their title to the ore, disclaimed, and rested his defence on the plea of *non cepit*. Green and Vanhyning, the subsequent lessees, laid no claim to the ore as mined by themselves or under their lease, and there was proof of Green's permission, as well as Lefever's, to the plaintiff to remove the ore after the expiration of their lease. It is true they set up a claim to the ore under Lefever as a right accompanying his demise to them, but it was a claim to it as mined or severed ore, and not as a part of the realty attached to the freehold. The real claim of the defendants, evidently was under a sale of the ore to them by Lefever, ore which they knew the plaintiffs had mined. The ground on which this claim is based is not very clear, whether on an independent sale or as an incident to the lease. In fact, however, the defendants showed no lease, the paper being unstamped and excluded by the court, and the controversy resulted in the question upon the plaintiffs' title, and their right to remove the ore after the expiration of their lease, and the right to maintain any action at all. The true question, therefore, was upon the title of the plaintiffs to the ore as a chattel, and not upon the title to the mines from which it had been severed. Under these circumstances we perceive no error in holding that replevin would lie, and in ruling that the right to recover the unwashed ore, was not affected by its being mixed with portions of earth that clung to it. It appears from the testimony

[Green *v.* Ashland Iron Co.]

that ore is often wet, and in mining some dirt will cling to it, which must be washed away, and therefore that it is thrown out into piles to dry. This being the course of business in mining iron ore, recognised by Lefever, the landlord, who laid no claim to retain the earth remaining in contact with the ore, it would be a technicality much too refined to hold that replevin for the ore thus mined and thrown out will not lie.

There is an obvious distinction between a disability of *person* which prevents a party from maintaining an action, and a defect of title which prevents his recovery. The point put by the defendants was that the plaintiffs were a foreign corporation having no legal existence in this state at the time this suit was instituted, and therefore could not recover. This was evidently a prayer for instructions founded on the disability of the person of the plaintiffs, and not because of an inability to acquire title to the thing in suit. The defendants asked no instructions on the latter, and, on the contrary, in their 4th point, asked the court to say that the plaintiffs, under their agreement with Lefever of February 3d 1859, *had power to mine and take away ore,* but had no right to remove the soil mixed with the ore, &c. The question was therefore not made to the court how far the plaintiffs were unable to obtain title to the ore, because of the invalidity of the lease under the 5th section of the Act of 26th April 1855, prohibiting foreign corporations from holding lands in this state without a special authority of law. Under the authority of Steward *v.* U. S. Ins. Co., 9 Watts 126, and the validating Act of April 14th 1868, Pamph. L. 1068, the court held that the action could be maintained notwithstanding the plaintiffs' foreign character. In this there was no error, and we will not reverse on a point not made in the court below.

The answers of the court as to the notice required to terminate the lease, which was indefinite in its duration, did the defendants no harm. Both parties called upon the court for instructions on this point, and they cannot complain that the court therefore stated the necessity of the notice to end the lease. But the court submitted the case to the jury on the fact of the abandonment of the possession by the plaintiffs and the entry of the defendants into possession, and the question whether Green had given leave to the plaintiffs to return and remove the ore. The case was fairly submitted on its facts, and we perceive no error therefore in the answers as to the notice to quit.

Judgment affirmed.