# Keys *v.* Uniontown Radial Street Railway Company, Appellant.

*Street railway companies—Eminent domain—Common carriers —Act of June 1, 1907, P. L. 368.*

1. A street railway company incorporated in 1910, under the Act of May 14, 1889, P. L. 211, and the amendments thereof "for the purpose of constructing, maintaining and operating a street railway for public use in the conveyance of passengers by power other than locomotive," has the power of eminent domain conferred by the Act of June 1, 1907, P. L. 368, and may re-locate its route in part by the exercise of such power, although its certificate of incorporation and letters patent do not state that it shall be a common carrier "of express matter, farm produce, garden truck, milk, merchandise, and other light freight and property."

2. As the Act of April 22, 1907, P. L. 96, gave to street railway companies incorporated to carry passengers the right and privilege to transport light freight, the purpose stated in the articles of association as quoted was sufficient, to indicate the right to carry light freight as incidental to the primary purpose of the corporation.

3. Whenever a street railway company, whether incorporated before or after the Act of June 1, 1907, P. L. 368, serves notice on a landowner of its purpose to condemn his land under the right of eminent domain, and files in court its petition and bond as required by the act it becomes bound as a common carrier of light freight from which duty nothing but performance will relieve it.

*Equity—Equity practice—Preliminary injunction—Corporations —Charter power.*

4. On an appeal from a decree refusing to dissolve a preliminary injunction, the established practice is not to consider the merits on appeal until after final hearing, but where the decree restrains a street railway company from exercising the right of eminent domain, and it appears that the court below based its decree upon the ground that the appellant company was not vested by its charter with the power of eminent domain, that question is raised by the record, and will be considered by the appellate court.

Argued May 9, 1912. Appeal, No. 150, Jan. T., 1912, by defendant, from decree of C. P. Fayette Co., In Equity No. 661, continuing preliminary injunction in case of John Keys v. Uniontown Radial Street Railway Company. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Reversed.

Bill in equity for an injunction. Before UMBEL, P. J.

The opinion of the Supreme Court states the case.

*Error assigned* was decree continuing the injunction.

*E. C. Higbee,* of *Sterling, Higbee & Matthews,* with him *L. B. Brownfield,* for appellant, cited: Com. v. At-

torney General, 30 Pa. C. C. R. 53; Pottstown Passenger
Ry. Co. v. Electric Street Ry. Co., 21 Montg. County,
152; Lehman v. Ry. Co., 224 Pa. 276; Economy Imp. Co.
v. Woodlawn Electric St. Ry. Co., 57 Pitts. Leg. J. 273.

*H. S. Dumbauld,* with him *Charles A. Tuit,* for appel-
lee, cited: Com. v. Erie, Etc., R. R. Co., 27 Pa. 339;
Packer v. Sunbury, Etc., R. R. Co., 19 Pa. 211; Bank
of Penna. v. Com., 19 Pa. 144; Woods v. Gas Co., 204
Pa. 606; Com. v. Pass. Ry. Co., 52 Pa. 506; Millvale
Borough v. Evergreen Ry. Co., 131 Pa. 1; Haines v.
Ry. Co., 1 Pa. D. R. 506.

OPINION BY MR. JUSTICE ELKIN, May 22, 1912:

This is an appeal from a decree continuing until
final hearing and further order of court, a preliminary
injunction restraining appellant from exercising the
right of eminent domain.   In the court below, at the
hearing to continue, and upon the motion to dissolve the
preliminary injunction, testimony was taken and an
exhaustive opinion filed on the principal question in
controversy between the parties.   When it appears
from the record that there was sufficient ground for the
action of the court in awarding the preliminary injunc-
tion, the established practice is not to consider the
merits on appeal until after final hearing and decree in
the Common Pleas.   But in this case, the learned court
below having based its decree on the ground that appel-
lant company was not vested by its charter with the
power of eminent domain, that question is squarely
raised by this record, and may be properly considered
now.   All of the facts necessary for a determination of
this question are before us, and it may be disposed of
without any infringement of the rule.

Appellant company was incorporated in 1910 for the
purpose of constructing, maintaining and operating a
passenger street railway, under the Act of 1889 and
the amendments thereto.   It is contended that a street

railway company incorporated after 1907 for the transportation of passengers cannot engage in the business of transporting farm produce, garden truck, milk, merchandise and other light freight and property over its lines; and that in order to be vested with the power to exercise the right of eminent domain it must be a common carrier of light freight and property of this character. Prior to the Act of 1907 street railway companies did not have the power of eminent domain. This act conferred a power not theretofore possessed, upon all such companies "now or hereafter chartered" under the Act of May 14, 1889, P. L. 211, and the several amendments thereof and supplements thereto. In Section 1 of the Act of June 1, 1907, P. L. 368, it is provided, that a company incorporated either before or after that date, "may locate or relocate its tracks and lines of railway so that the same may be in whole or in part on a public highway, or in whole or in part over private property; and shall have the right of eminent domain, which is hereby conferred; and by virtue of such right may take and occupy so much land or material as may be necessary for the location, construction and operation of its railway either as an extension or relocation of an existing line, or as a new line......" It is too plain for argument that the right of eminent domain is conferred upon all street railway companies without reference to the time of their incorporation. It is true the act does provide "that all street railway companies that shall avail themselves of the right of eminent domain shall be common carriers of express matter, farm produce, garden truck, milk, merchandise, and other light freight and property." Any company that avails itself of the right has imposed upon it the duties of a common carrier of light freight by the express terms of the statute. The only question that can possibly arise under the act is in what manner shall a company be required to avail itself of the right. Shall it be required that the purpose to carry light freight be

stated in the articles of association, or in the letters patent, or in the constating instruments, before the right can be asserted? The appellee so contends. The Act of 1907 does not so provide, and to so hold, it will be necessary to read into the act by interpretation this requirement. In our opinion, neither the language of the Act of 1907 conferring the right of eminent domain, nor the historical view of the legislation authorizing the incorporation of street railway companies, warrants such a conclusion. The primary purpose of these acts is to authorize the incorporation of companies for the transportation of passengers, and the carrying of light freight is made by the Act of 1907 incidental to this general purpose. Under existing law there is no authority to incorporate a street railway company for the transportation of light freight alone. This is a privilege conferred, or a duty imposed, as the case may be, upon street railway companies incorporated for the transportation of passengers. The power is conferred upon companies incorporated to transport passengers, when they elect to avail themselves of the right, and is not restricted to those originally incorporated as carriers of freight and passengers. It would seem to follow that the statement of purpose for which the company is primarily incorporated is sufficient to include those incidental duties which the legislature thought proper to impose upon corporations so created. It must not be overlooked that eminent domain is the sovereign power vested in the Commonwealth, and that its exercise is always regulated by constitutional and statutory law. In dealing with this subject the legislature, within constitutional limitations, has very great power to grant or withhold. It was within the power of the legislature to confer the right of eminent domain upon corporations already created, as well as upon those to be subsequently incorporated. It did this thing in express terms, and it would seem somewhat violent for courts to say that corporations may not exercise the right con-

ferred until charters have been amended, or other acts antecedently done, which the act does not require. We are not advised of any statutory provision for amendment of the statement of purpose in charters of street railway companies, and if it now be held that the purpose to carry light freight must be stated in the articles of association before exercising the right of eminent domain, all such companies incorporated prior to the Act of 1907 would be denied a right which the legislature has expressly conferred. There is nothing in this record to warrant such a result, nor is there anything to indicate that the legislature intended to thus restrict the power granted. Nor is it apparent why any distinction in this respect should be made between companies incorporated before and after the Act of 1907. The legislature treated these corporations as a class, without reference to the date of their incorporation, and this being primarily a legislative question, there does not seem to be any sufficient ground for applying one rule to companies incorporated after the Act of 1907, and another to those created prior to that time. It is clear that the legislature intended the right to be exercised by all street railway companies if they choose to avail themselves of it. When they do avail themselves of the right they are bound as common carriers during their corporate existence. When, as in the case at bar, the company served notice on the land owner of its purpose to condemn his land under the right of eminent domain, and filed in the court below its petition and bond as required by the act, it became bound so far as appellee is concerned at least as a common carrier of light freight from which duty nothing but performance would relieve it. This was a declaration in a court of law of its election to assume the duties of a common carrier, and to be vested with the right of eminent domain. It was not required to make the election, but when it did so, the right to exercise the power vested, and the duties of a common carrier were assumed. After that

election the rights and duties of the corporation were fixed, with respect to the privileges and burdens resulting as a legal consequence.

We agree that in the consideration of this case some confusion has arisen by reason of failure to distinguish between the purpose of a corporation as stated in the articles of association and the powers of such corporation conferred by statute. No matter what the charter contains, or what is stated in the articles of association, the powers of a corporation depend upon statutory grant. The purpose must be stated in the constating instruments, but the powers are conferred by statute. The Act of April 22, 1907, P. L. 96, gave to street railway companies the right and privilege to transport light freight of the kind specified over their lines, and it is important to bear in mind that this privilege was conferred upon street railway companies incorporated to carry passengers. This is a legislative declaration that the carrying of light freight by street railways is to be considered as incidental to the general purpose of their incorporation. When so regarded the purpose stated in the articles of association in the case at bar is sufficient not only to indicate the right to transport passengers, but to include the right to carry light freight as incidental to the primary purpose of the corporation.

We, therefore, conclude that appellant company, in so far at least as the provisions of the Act of 1907 are involved, was in position to exercise the right of eminent domain when it filed its petition and bond in the court below with notice to the land owner of its purpose to condemn. Several other grounds are set forth in the injunction bill asking for relief, but upon the record presented here they cannot be considered. Upon the main question hereinbefore discussed, the merits of the controversy are with appellant, although for other reasons indicated by the record the right to condemn may not have existed at the time the bill was filed. We do not pass on any of these questions except the one

considered. They may be brought to the attention of the court below if it is so desired. Under these circumstances, and because the right to locate the line of street railway through land of appellee may not have existed when the bill was filed, we think appellant should pay the costs in the court below and here up to the present time.

Decree reversed, preliminary injunction dissolved, and record remitted for further hearing on the bill, if for any of the reasons not considered here, the appellee desires to be heard in the court below. Costs to be paid by appellant.