Williams *v.* Bridy, Appellant.

Argued November 19, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

2

*Richard Henry Klein,* with him *Penrose Hertzler,* for appellants.

*Andrew M. Pipa, Jr.,* with him *H. F. Bonno,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, December 17, 1957:

This is an appeal from a decree of the Court of Common Pleas of Northumberland County, sitting in equity, which granted a preliminary injunction restraining the defendants, individual and corporate, from entering upon a 21½ acre tract of land in Coal Township, Northumberland County, and from removing material from a culm and refuse bank located thereon.

The scope of our review in this type of proceeding is clear.[1] In *Lindenfelser v. Lindenfelser,* 385 Pa. 342, 343, 344, 123 A. 2d 626, we stated: "Our uniform rule is that, on an appeal from a decree which refuses,

---

[1] The right and propriety of an appeal from a preliminary injunction is well-established: Act of Feb. 14, 1866, P. L. 28, §1, 12 PS §1101; *Roth v. Columbia Distributing Company of Allentown,* 371 Pa. 297, 89 A. 2d 825. Appellee's contention that the appeal is premature in the absence of a lower court hearing is not supported by the record which indicates a hearing was held.

grants or continues a preliminary injunction, we will look only to see if there were any apparently reasonable grounds for the action of the court below, and we will not further consider the merits of the case or pass upon the reasons for or against such action, unless it is plain that no such grounds existed or that the rules of law relied on are palpably wrong or clearly inapplicable: [citing cases]". With this rule in mind we examine the present record.

The entire controversy is centered on a 21½ acre tract of land upon which is located a culm and refuse bank. Originally this tract was part of a larger tract known as the Fulton Tract and owned by the Fulton Company, a subsidiary of the Philadelphia & Reading Coal and Iron Company (hereinafter called Reading). In 1938 Fulton Company quitclaimed its interest in the Fulton Tract to the Great Anthracite Coal Co. (hereinafter called Anthracite), reserving to itself, inter alia, the right to strip the coal lying under the surface of the 21½ acre tract now in dispute. In 1939 Anthracite conveyed its rights in the Fulton Tract to one Julius Christiana. In 1945, because of the nonpayment of taxes in 1939 and 1943, the Treasurer of Northumberland County exposed the Fulton Tract at public sale and, in the absence of any other bidders, the County of Northumberland purchased the Fulton Tract,[2] including the 21½ acre tract.

In 1951 Bridy, the individual defendant,[3] purchased from the Fulton Company all the "stripping rights" which it had reserved in the coal under the 21½ acre tract. Approximately six weeks later Bridy received

---

[2] More specifically, the County purchased whatever interest Christiana received from Anthracite and Anthracite received from Fulton Company in the Fulton Tract.

[3] The corporate defendant-appellant is simply the "operating" concern.

4

from the County of Northumberland a so-called redemption deed for which he paid the County $4,115.33. This redemption deed recited, inter alia, that Bridy "is the present owner of seven and seven-tenths (7.7) acres, in fee, and thirteen and eight-tenths (13.8) acres, surface only, of" the Fulton Tract and that this acreage had been redeemed by Bridy. *The redemption deed "granted, bargained and sold" to Bridy "all the right, title and interest of the said County of Northumberland" in the 21½ acre tract described by metes and bounds.* On the basis of the documentary evidence presented Bridy claims that by virtue of and as of the date of this deed—November 5, 1951—he acquired ownership of this tract of land and in addition thereto already owned the "stripping rights" to the coal under the land by his previous purchase from Fulton Company.

The documentary evidence tends to show that in 1938 the Fulton Company, which then owned the culm and refuse bank located on this land, leased it to the Reading for a 5 year term. This lease was further renewed from year to year and finally in 1952 the Reading purchased all the Fulton Company's interest in the bank.[4]

On June 24, 1957 the County of Northumberland gave a lease to Williams, the appellee, expiring December 31, 1959. This lease purports to "grant unto [Williams], the right of removing and marketing the mate-

---

[4] Culm and other minerals severed from the realty are personal property: *Llewellyn et al. v. P. & R. C. & I. Co.*, 308 Pa. 497, 162 A. 429; *Fidelity-Philadelphia Trust Co., Executor v. Lehigh Valley Coal Co.*, 294 Pa. 47, 143 A. 474; *Sturdevant et al. v. Thomson*, 280 Pa. 233, 124 A. 434; *Kramer v. Slattery*, 260 Pa. 234, 103 A. 610; *Lehigh Coal Co. v. Wilkes-Barre and Eastern Railroad Co.*, 187 Pa. 145, 41 A. 37; *Green v. Ashland Iron Co.*, 62 Pa. 97; *Lykens Valley Coal Co. v. Dock*, 62 Pa. 232.

rial from the bank situate on the hereinafter described premises . . ." and then recites that the "land hereby demised and leased" is the same 21½ acre tract described by metes and bounds.[5]

Appellee, on August 19, 1957, filed a complaint in equity seeking to enjoin appellants from trespassing on the 21½ acre tract and removing any of the culm or refuse material from the surface of the tract and to direct them to remove their equipment from the tract and to pay compensation for any damage done by them. The court below granted a rule to show cause why a preliminary injunction should not be issued returnable August 24, 1957. After appellants filed an answer to the rule, a hearing was held. Preliminary objections to the complaint were filed, the matter was argued and, on September 13, 1957, the court granted a preliminary injunction as requested. From that decree this appeal was taken.

Appellants' preliminary objections filed under Pa. R. C. P. 1509 raised three principal questions: (1) in so far as the complaint seeks to enjoin the appellants from removing materials from the culm and refuse banks, equity does not lie because such materials are personalty neither unique nor peculiar for which compensation in damages can be had; (2) in so far as the complaint seeks to enjoin the trespass on the land, such land belongs to the appellants and not to appellee; (3) appellee has a full and adequate remedy at law in replevin or trover (now trespass) for the personalty and ejectment or an action to quiet title for the land. Appellants' preliminary objections filed under Pa. R. C. P. 1017 raised four principal questions:

---

[5] The parties agreed that appellants placed "No Trespassing" signs and equipment on and were in possession of the tract described in the lease to appellee from the county.

(1) that appellee had misjoined a cause of action based on an alleged detention of personalty with a cause of action based on an alleged trespass to land; (2) that appellee has available a statutory remedy both as to the land[6] and as to the personalty;[7] (3) equity has no jurisdiction to issue an injunction where the title to realty or personalty is involved until the question of title has been determined; (4) that the complaint fails to aver either appellee's ownership or right of possession to the culm and refuse bank upon which equity can act.

An examination of the pleadings and the record indicates that the entire controversy involves the question of title to both the land and the culm bank. Appellee relies entirely on the lease from the County to establish his right to possession of both the land and the culm bank and his title therefore depends on the County's title, if any.[8] Appellants rely upon the deed from the County to establish their title to the land,

---

[6] Act of May 16, 1919, P. L. 180, as amended, 72 PS §6139 et seq. which provides for the establishment of title to lands purchased by the County at Treasurer's Sale.

[7] Act of May 15, 1871, P. L. 268, §1, 12 PS §1847 which provides for the establishment of title to coal severed from realty.

[8] The record sheds no light on the position of the County, a position most difficult to understand. If the County takes the position that on June 24, 1957 it had title to the land and the culm and refuse bank—as the language of the lease to Williams clearly indicates—of what did it divest itself under the clear unmistakable language contained in the deed of November 5, 1951 to Bridy and from what source did it acquire title to the culm and refuse bank? The prima facie presumption that public officers acted with regularity until the contrary appears (*Hughes v. Chaplin*, 389 Pa. 93, 95, 132 A. 2d 200; *Glass et al. v. Seger et al.*, 265 Pa. 391, 109 A. 211) would apply not only to the actions of the County Commissioners on June 24, 1957, but also to their actions on November 5, 19ᵳ1; appellee's argument in this respect is unsound.

upon the deed from Fulton Company to establish their title to the "stripping rights", and present documentary evidence tending to establish title to the culm and refuse bank in the Reading. The adjudication of the respective claims requires that the chancellor establish in whom the legal title to both the land and the bank reposes.

In *Sears v. Scranton Trust Company*, 228 Pa. 126, 136, 77 A. 423, we said: "Whatever may be the prayer of a bill, *if the kernel of the controversy is the legal title to land, then equity cannot be invoked;* but where the question of the legal title is incidental and subordinate to other elements which call for the exercise of equitable remedies, equity will take and retain jurisdiction: [citing cases]". (Emphasis supplied) In *Myersdale & Salisbury Street Railway Company v. Pennsylvania & Maryland Street Railway Company*, 219 Pa. 558, 565, 566, 69 A. 92, it was stated: "The complainant must establish a clear legal right, not doubtful, nor uncertain, and the injury threatened must be of a permanent and irreparable character. *Where the complainant's title is doubtful equity will not relieve by injunction:* [citing cases]. It is the duty of the court when an injunction bill has been filed, to inquire and ascertain whether the individual, or corporation, seeking the relief, has a *clear legal right* to the use, occupation or enjoyment of the property or right, the invasion of which is sought to be enjoined. These are elementary principles in a proceeding in equity. The complainant must rely on the strength of his own title, or other legal right, and not on the weakness of the title or legal right asserted by the respondent." (Emphasis supplied) In *Hunter v. McKlveen, Prothonotary, et al.*, 353 Pa. 357, 360, 361, 45 A. 2d 222, this Court, speaking through the late Chief Justice DREW, said: "A court of equity generally will not take

jurisdiction to try title to real property: [citing cases]. . . . In Richmond v. Bennett [205 Pa. 470, 474, 55 A. 17], this Court said: 'It is true that in action respecting real property, where the plaintiff's right has not been established at law or is not clear, he is generally not entitled to remedy by injunction; but where in a proceeding in equity the plaintiff's title is clear, and all the evidence relating to it is of such a character that a judge in a trial at law, upon the same evidence, would not be at liberty to submit the question of the plaintiff's title to the jury, equity will grant relief although there has been no adjudication of the title at common law' ". See also: *Butler v. Butler,* 377 Pa. 388, 390, 391, 105 A. 2d 62; *Ohringer Home Furniture Co. v. Hollingsworth et al.,* 375 Pa. 285, 290, 291, 100 A. 2d 62; *Teacher et al. v. Kijurina,* 365 Pa. 480, 484, 485, 76 A. 2d 197.

Tested by these standards has equity jurisdiction to grant injunctive relief in the instant case?

### The Culm and Refuse Bank

An examination of the complaint reveals that appellee has made no averment whatsoever that he or the County had any right, title or interest in the culm and refuse bank, either at the time suit was instituted or at any time in the past. An examination of the documentary evidence reveals only that appellee claims that the County received through the tax sale that which Fulton Company had conveyed to Great Anthracite and the latter had conveyed to Christiana. There is absolutely no evidence that, through the medium of these conveyances, title to the culm and refuse bank ever vested in the County. Even if appellee had clearly established his right of possession of the surface of the 21½ acre tract and the County's ownership thereof, such right of possession and ownership would not

carry with it the culm and refuse bank—personal property—on the tract's surface: *Russell v. Howe,* 30 Pa. Superior Ct. 591; *Keystone Coal Co. v. Williams,* 216 Pa. 217, 65 A. 407. Even if this were not so and the County did, by virtue of its ownership of the surface, acquire title to the culm and refuse bank located thereon, was the deed of November 5, 1951 a conveyance to Bridy of the County's title to the culm and refuse bank?[9]

If the County claims title to the culm and refuse bank by virtue of the tax sale—a claim not averred by appellee—the question arises whether by virtue of the tax sale the County acquired title to other than land and whether the treasurer had the right at the tax sale to sell other than the land and any unsevered mineral rights (i.e. realty).

On the other hand there was introduced at the hearing documentary evidence which tended to show title to the bank in neither the appellee or appellants but in a third party not of record, the Reading, and other evidence showing that appellants were in possession of the bank and therefore presumably the owner of it: *Kaufmann's Estate,* 281 Pa. 519, 532, 127 A. 133.

Under the pleading and the evidence produced at the preliminary hearing, appellee's right to possession of this bank is anything but legally clear and his right to enjoin appellants necessarily depends on his own title to the bank.

### The Surface of the Tract

While an examination of the complaint indicates that the averment of title to the tract in the County was pleaded, albeit somewhat inartistically, yet the evidence produced indicates the source of appellee's

---

[9] It will be noted that Bridy makes no such claim.

title and the source of appellants' title was identical, to wit: the County of Northumberland, that the instrument under which appellants claim title preceded that under which appellee claims by approximately five and one-half years and that a very serious question is presented whether on June 24, 1957 the County had any interest whatsoever in the tract to convey to anyone. Certainly, on the face of the record there is considerable doubt as to the strength of appellee's title to the surface of this land, and it is upon that title that appellee must rely for injunctive relief.

Instances wherein we reverse the grant of a preliminary injunction are rare (*Philadelphia Record Co. v. Curtis-Martin Newspapers, Inc. et al.*, 305 Pa. 372, 157 A. 796; *Keys v. Uniontown Radial Street Railway Company*, 236 Pa. 611, 84 A. 1109) even though our authority to do so is clear. The present situation impels such action. A careful examination of appellee's pleading and the record at the preliminary hearing leads to the conclusion that the primary and controlling, if not the sole, question presented is title to the land and the bank. Appellee's title to either, or both, has not been established at law and proof of his title falls short of the standard required by our decisions. Under such circumstances equity, from time immemorial not a trier of title to land or personalty, should not extend the drastic arm of injunctive relief.

The issuance of even a preliminary injunction under the instant circumstances is in derogation of the long recognized rule in our Commonwealth that equity will not grant injunctive relief unless title is *clearly* established. To reach this result we make no inquiry into the merits nor inquire into the reasons for and against the court's actions; absent proof of a *clear legal title,* injunctive relief cannot be granted, and the record shows no such proof.

In view of the conclusion which we have reached it is unnecessary to consider the other matters raised upon the preliminary objections.[10]

Decree reversed with the direction that the proceedings be certified to the law side of the court for an early trial to determine title to both the land and the culm and refuse bank. The court below is further directed to require of the defendants a bond with surety approved by the court in a reasonable amount conditioned for an accounting, if the trial shows an accounting to be necessary, for the coal mined hereafter until the final determination of the case. Costs to abide the event.

___

[10] Under the rule of *Kramer v. Slattery*, supra, it is highly questionable whether appellee, if he established his title to the bank, would not have an adequate remedy at law for the recovery of any damages he might sustain by reason of removal of material from the bank.