426

## Hilt Estate

*Peter A. Glascott,* for estate.

*Samuel A. Litzenberger,* for claimants.

*Lawrence Barth,* Deputy Attorney General.

ADJUDICATION BY MIMS, J., OCTOBER 1, 1981:

The first and final account of Frederick V. Stapleford, executor of the estate of said decedent, was presented to the court for audit, confirmation and distribution of ascertained balances on September 8, 1981, as advertised according to law. Due proof of appropriate notice thereof to all parties legally interested in said estate appears in the record. ***

A claim has been presented by Elizabeth R. Wolfinger, Thomas S. Wolfinger, Jr. and Constance F. Wolfinger, for 891 gallons of fuel oil returned to the dealer. The claim is for $818.84. The fuel oil was in the oil tank of the real estate in which the decedent had retained a life estate and the claimants are the remaindermen. The claimants believe that the fuel oil was a part of the real estate. The estate, on the other hand, contends that the fuel oil was personal property and thus an estate asset. The executor also claims the sum of $91.90 for the 100 gallons of oil left in the tank.

Counsel have filed a stipulation of facts and memoranda of law.

In September of 1965, the decedent was the grantor in a deed transferring real estate to herself and her sister, C. Rachel Hilt, as grantees and life tenants for their natural lives, or the life of the survivor of them with the remaindermen be-

ing Thomas S. Wolfinger, Jr. and Constance F. Wolfinger, husband and wife, as tenants by the entireties of one-half thereof, to hold said one-half interest as tenants in common with Elizabeth R. Wolfinger and Walter H. Wolfinger, husband and wife, as tenants by the entireties of the remaining one-half thereof, the said Walter H. Wolfinger died in June, 1979, whereby the one-half remainder interest vested in Elizabeth R. Wolfinger.

C. Rachel Hilt predeceased the decedent and upon the death of the decedent on September 2, 1980, the claimant remaindermen became seized of the premises in fee simple.

The decedent ordered the fuel oil to be delivered and paid for it although there was a balance owing at the time of her death to the fuel oil dealer.

The executor returned all but 100 gallons of the oil to the dealer who pumped it out at a charge of $75. He then gave a credit to the estate of $818.84 for the oil.

The decedent lived on the real estate and was obligated to pay the taxes and insurances thereon and was entitled to exclusive possession of the real estate.

The position of the claimants is that the fuel oil became a part of the realty and thus upon the death of the life tenant became the property of the remaindermen.

The estate on the other hand takes the position that the oil is personal property and therefore an asset of the estate and subject to the duties and responsibilities of the executor.

"Property" as common law concept, is the right of any person to possess, use, enjoy and dispose of a thing. See *Willcox v. Penn Mutual Life Insurance Co.*, 357 Pa. 581.

The term "personal property" has a distinct technical meaning and includes everything which is the subject of ownership not coming under the denomination of real estate. See *McGlathery's Est.*, 311 Pa. 351; *Lewis Est.*, 407 Pa. 518.

In *White v. New York State Natural Gas Corp.*, 190 Fed. Supp. 342 (1960), the United States District Court, Western District of Pennsylvania, held that gas or oil, once severed from realty, becomes personal property and that the storage of gas into a natural underground reservoir does not change this gas to realty but it remains personal property.

The Pennsylvania courts have held that minerals severed from their original place in a mine are personalty. See *Green v. Ashland Iron Company*, 62 Pa. 97; *Lykens Valley Coal Company vs. Dock*, 62 Pa. 232; *Williams v. Bridy*, 391 Pa. 1.

A fixture is an article of personal property which, by reason of physical annexation to a building, becomes in legal contemplation a part of the real estate: *Morris's Ap.*, 88 Pa. 368; 16 *PLE* Fixtures §1, cited in *O'Donnell v. Schneeweis*, 73 D. & C. 2d 400 at pg. 402.

In *O'Donnell*, Judge Sugarman stated at page 403, the following:

> "Chattels used in connection with real estate are of three classes: First, those which are manifestly furniture as distinguished from improvements, and not particularly fitted to the property with which they are used; such chattels always remain personalty: Clayton v. Lienhard, 312 Pa. 433, 167 Atl. 321 (1933); Jerechi v. Philaharmonic Society, 79 Pa. 403 (1876). The second class consists of those chattels so annexed to the property that they cannot be removed without material injury to the real estate or to the chattels themselves; such chattels are realty, even in the face of an expressed intention that they should be considered personalty: National Bank of Catasauqua v. North, 160 Pa. 303, 28 Atl. 694 (1894); Clayton v. Lienhard, supra. The third class includes those chattels which, although physically connected with the real estate, are so affixed as to be removable without destroying or materially injuring the chattels themselves, or the property to which they are annexed; such chattels become part of the realty or remain personalty, depending upon the intention of the parties at the time of annexation: American Laundry Mach. Co. v. Miners Trust Co., 307 Pa. 395, 161 Atl. 306 (1932); Clayton v. Lienhard, supra; Royal Store Fixture Co. v. Patten, 183 Pa. Superior Ct. 249, 130 A.2d 271 (1957)."

In *O'Donnell* the personal property in issue between the vendor and vendee consisted of wall-to-wall carpeting, mirrors, glass or spectacle cases and wall racks, shutters, cafe doors, and lighting fixture. In this case each item was examined and considered against the standards set forth above to determine if it should remain with the realty.

Applying the above standards to the fuel oil which decedent purchased and had injected into the underground tank, we are satisfied that the oil remained personal property in that it could be and was removed without materially injuring the oil itself or the real estate. Had the decedent not died when

she did this fuel oil would have been consumed in the use for which it was intended, namely, to warm the house in which the decedent had the right to live during her lifetime. The decedent and her estate paid for the oil and it was appropriate for the personal representative to take possession of that asset of the decedent's estate.

The claim of the remaindermen is hereby denied.

The claim of the estate against the remaindermen for the value of the oil remaining in the oil tank is hereby approved. The remaindermen are hereby directed to pay the sum of $91.90 to the estate. ***