456 A.2d 1002

**PEUGEOT MOTORS OF AMERICA, INC.**

**v.**

**John STOUT, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 1, 1980.

Filed Feb. 11, 1983.

414

Joseph R. Siegert, Philadelphia, for appellant.

Sarah Thompson, Philadelphia, for appellee.

Before PRICE,* WATKINS and MONTGOMERY, JJ.

PRICE, Judge:

On April 13, 1978, John Stout was preliminarily enjoined from selling, titling or transfering two cars which appellee, Peugeot Motors of America, Inc. ("Peugeot"), had sold to Mr. Stout allegedly for "parts only". On December 3, 1979, the Honorable Victor J. DiNubile entered a decree nisi in favor of Peugeot, permanently enjoining Stout from selling one of the cars and from titling the other automobile. On May 1, 1980, after hearing argument on Mr. Stout's exceptions and accepting additional briefs, Judge DiNubile dismissed Stout's exceptions and made the decree nisi final. Stout appeals from this decree.

* Died Jan. 30, 1983. Decision was reached prior to the death of Judge Price.

The facts of the case are as follows: During November 1977, Peugeot received at its New Jersey port facilities three Peugeot vehicles which were damaged in ocean transit. Peugeot classified each of these three vehicles a "constructive total loss" ("CTL") after determining that the vehicles were unsafe and unfit for highway use. The serial numbers affixed to or stamped upon each car were removed or obliterated. Peugeot then telephoned several Peugeot dealerships, including the one owned by Stout, and suggested that each dealer inspect the vehicles and submit bids for them.

Mr. Stout denies ever having been told that the vehicles were to be sold for parts only; whereas Peugeot claims that this was made clear from the beginning. Mr. Stout inspected the cars and submitted bids. For the two cars in controversy, he bid $1,650 and, as this was the highest offer, Peugeot orally informed Mr. Stout on January 16, 1978 that his bids were accepted. Bank approval for Stout to draw on his line of credit was given on February 13, 1978. The accepted bid identified the subject vehicles, described them as "damaged vehicles", acknowledged Stout's inspection of them, specified the price and was dated January 13, 1977, (which was agreed to actually be 1978).

Stout admits that late in January a Peugeot employee informed him that the vehicles would have no warranties, serial number plates, or certificates of origin. (R. 83a.) Apparently Stout did not consider this information to be significant as he did not question Peugeot about this unusual occurrence. Without these safety certification plates, cars may not be resold to a consumer.[1]

On February 16, 1978, Peugeot drew up and mailed two invoices to Stout, spelling out thereon the date, dealer, year, model, type, serial number, exterior color, and price of the automobiles. The invoices also bore on their faces the following typewritten words: "Above car is a constructive total loss and is not to be restored or repaired. CTL vehicle is sold for parts salvage only." (R. 323a). Stout admits

1. 15 U.S.C. § 1391 et seq.

that he read the invoices and their terms, but again he apparently did not consider the language to be a problem and did not question Peugeot as to the restriction.

The vehicles were delivered in the middle of March. Peugeot discovered thereafter that Stout was in the process of restoring one of the cars for sale and ultimate use on the highway. Peugeot sent a telegram warning Stout that he was in violation of his contract by repairing the cars and that any sale would also be a violation. Stout sold one of the cars to a Delaware resident for $7,500 that same day, April 6, even though the car did not have title or an identification number. Stout was allegedly trying to obtain a reconstructed title. As Stout was repairing the second car, a preliminary injunction was issued prohibiting him from the sale or repair of the second car or from any further action in titling the first car. Stout agreed to the entry of this injunction without prejudice and the case went to trial in June 1979.

The lower court did not find Stout's version to be convincing and held that the agreement was that the cars were to be sold for parts only. Although much of Peugeot's evidence was circumstantial, such as the removal of the serial number and the invoices, the court found it to be credible and held that any further action by Stout to repair or title the automobile would cause Peugeot to suffer irreparable harm because of the potential liability in tort for a defective product.

The issues [2] in this case are whether Peugeot proved that the oral agreement between the parties was that the cars were to be sold for parts only and whether the alleged harm was sufficient to necessitate an injunction. Stout also raises various evidentiary issues, including whether the invoices were properly admitted and if his direct evidence could be contradicted by circumstantial evidence, but all of

2. Appellant's statement of the questions is misleading and verbose (see Pa.R.A.P. § 2116.) Thus we find it necessary to rephrase the issues involved in a manner that is more consistent with appellee's counterstatement of the questions.

these considerations concern the question of what was agreed to by the parties.

■■■■ Our scope of review on appeal is limited. "The trial judge sitting in equity as a chancellor is the ultimate fact finder." *Balin v. Pleasure Time Inc.*, 243 Pa.Superior Ct. 61, 68, 364 A.2d 449, 453 (1976). It is well recognized that a chancellor's findings of fact, when supported by competent evidence, have the weight of a jury verdict. *Fascione v. Fascione*, 272 Pa.Superior Ct. 530, 416 A.2d 1023 (1979).[3] "The chancellor's findings are entitled to particular weight in a case in which the credibility of the witnesses must be carefully evaluated because he has had the opportunity to hear them and observe demeanor on the stand." *Vento v. Vento*, 256 Pa.Superior Ct. 91, 95, 389 A.2d 615, 617–18 (1978), quoting *Stauffer v. Stauffer*, 465 Pa. 558, 567, 351 A.2d 236, 240 (1976).[4] The findings of fact of the chancellor should not be set aside unless the error is manifest. *Van Schoiack v. United States Liability Ins. Co.*, 390 Pa. 27, 133 A.2d 509 (1957). "Therefore only if it is plain that ... the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the chancellor." *Cardamone v. University of Pittsburgh*, 253 Pa.Superior Ct. 65, 384 A.2d 1228 (1978).

■■■■ The chancellor found that the "credible evidence demonstrates that the cars were sold for parts only." Slip op. at 6. We accept this finding and hold that it is adequately supported by the voluminous record. The determination of the contents of a mixed written and oral contract

---

**3.** *See also, Adler, Barish, Daniels, Levin & Creskoff v. Epstein*, 482 Pa. 416, 393 A.2d 1175 (1978) cert. den. and app. dismd. *Epstein v. Adler, Barish, Daniels, Levin & Creskoff*, 442 U.S. 907, 99 S.Ct. 2817, 61 L.Ed.2d 272 (1979); *Baker v. Zingelman*, 259 Pa.Superior Ct. 441, 393 A.2d 908 (1978); *Cardamone v. University of Pittsburgh*, 253 Pa.Superior Ct. 65, 384 A.2d 1228 (1978).

**4.** *See also Reifschneider v. Reifschneider*, 413 Pa. 342, 344, 196 A.2d 324, 325 (1964); *Kimball v. Barr Township*, 249 Pa.Superior Ct. 420, 378 A.2d 366 (1977).

is for the factfinder unless there is no conflicting evidence. 8 P.L.E. *Contracts* § 177 (1971).[5]

The evidence in support of the chancellor's findings was circumstantial in nature. Stout admitted that he was told from the outset that the serial numbers would be removed from the cars and that no certificate of origin would be issued. (R. 41a). The procedures followed in bidding on and receiving the cars differed from the ordinary procedures in the case of "used cars" to be repaired (R. 104a–110a, 200a to 204a). Stout purchased the cars for a fraction of the normal price even for damaged cars.[6] (R. 300a–308a). Peugeot's business records indicated that they intended to sell the cars for parts only (R. 92a–94a, 97a–107a), and there was a business custom of classifying damaged cars in this way (R. 128a). As mentioned previously, Stout failed to respond to the invoices which clearly set forth the restrictions, (R. 81a–87a), although he did read them. (R. 321a–322a). Peugeot had little to gain from changing its story and advanced a strong reason for not having the cars resold, i.e., the potential of strict liability lawsuits.

■ A party may establish its entire case on circumstantial evidence. In *Deaver v. Miller*, 260 Pa.Superior Ct. 173, 177–178, 393 A.2d 1209, 1211 (1978), we stated:

> Although a jury may not be permitted to reach its verdict merely on the basis of speculation or conjecture, but must have evidence upon which logically its conclusion may be based, circumstantial evidence may be adequate to prove a plaintiff's case. It is not necessary that every fact or circumstance be established unerringly. *Winkler v. Seven Springs Farm, Inc.*, 240 Pa.Superior Ct. 641, 359 A.2d 440 (1976), affd. 477 Pa. 445, 384 A.2d 241 (1978).

---

5. *See Bastian v. Marienville Glass Co.*, 281 Pa. 313, 126 A. 798 (1924); *Philadelphia Use of Faith v. Stewart*, 201 Pa. 526, 51 A. 348 (1902); *Mead & Speer Co. v. Krimm*, 43 Pa.Superior Ct. 376 (1910).

6. Stout purchased the cars for $1,650. Normally the purchase price would have been $8,000. The retail value of the cars was between $8,600 and $9,500. Stout spent $1,500 on each vehicle for repairs.

All of this evidence, though circumstantial, is more than sufficient to support the chancellor's findings concerning the contents of the oral contract.

■ Stout, on the other hand, relied primarily on his direct testimony to prove his case, although he also offered much evidence concerning the alleged safe condition and easy repairability of the cars. Stout contends that his direct testimony could not be contradicted by Peugeot's circumstantial evidence. This is simply incorrect. It is up to the factfinder to judge the credibility of evidence, whether it be circumstantial or direct testimony. In *Stack v. Wapner*, 244 Pa.Superior Ct. 278, 368 A.2d 292 (1976), the court held that circumstantial evidence (the absence of any entry on a medical chart) was sufficient to contradict the defendant's direct testimony. In that case, we reaffirmed the principle that:

> ... [W]here a litigant calls his adversary as for cross-examination ... the testimony thus obtained is conclusively taken to be true *if it is not rebutted by other evidence* [citation omitted].... Again, this general rule that a party calling his opponent as for cross-examination is [bound] by this testimony is subject to the exceptions that there may be such a degree of improbability in the statements themselves as to deprive them of credit, or that *the circumstances themselves* may constitute sufficient contradiction [citations omitted].

*Id.*, 244 Pa.Superior Ct. at 284, 368 A.2d at 295 [emphasis added]. Thus, it was within the discretion of the chancellor to find that Stout's testimony was not credible.

■ Stout also takes exception to the fact that the Peugeot employee to whom he originally spoke did not testify at trial. Stout's conclusion is that a negative inference must be drawn from this absence—i.e. that the employee would have corroborated Stout's position. The rule to which Stout refers, however, applies only when the evidence that is not offered is within "the control of the party".[7] Instantly, Stout himself testified that this employ-

7. Stout cites to the *Trial Evidence Handbook*, Sec. 2.15, p. 49.

ee was no longer with Peugeot. (R. 230a). Thus he was not in the control of Peugeot and was beyond subpoena reach. Even if the employee had been in Peugeot's control, it would have been an inference which the chancellor may or may not have accepted.

In any contracts case, one of the major issues concerns the determination of what the parties intended. Stout contends that the evidence shows that the parties intended that the contract was for the sale of the cars without any prohibition on resale. Peugeot's alleged motivation for the prohibition was a fear of strict liability lawsuits and the possibility of losing its reputation for building sturdy cars. Stout claims that Peugeot invented the prohibition against resale in order to avoid being embarrassed in its relationship with the insurance company. Stout, however, did not understand that Peugeot was to get the same amount of insurance whether or not the cars were resold (R. 103a–104a, 113a–114a, 227). Peugeot collected the insurance based on a belief that the cars could not be safely repaired, a belief that was based in part from the insurance company's own investigator. Stout has offered no other reason as to why Peugeot would not want the cars to be repaired. It adds to Peugeot's credibility that it appears as if there would be no other motivation for such a prohibition except the one given by Peugeot (i.e. damage to reputation and potential liability).

Both sides [8] also offered testimony concerning the feasibility of repairs as evidence of the contract. The chancellor allowed the testimony only for the purpose of credibility. Stout contends that this evidence was virtually ignored in the lower court and should have been given more weight as evidence of the contract itself. We agree with Judge DiNubile who stated during the hearing:

> I will allow it [testimony regarding repair] again only for the purpose of credibility. If I believe that, the

8. Stout challenges the introduction of damage appraisal reports by Peugeot. The chancellor held that these reports were admissible as business records to show whether or not Peugeot's belief that the cars could not be repaired was reasonable. We agree with this finding.

testimony of the plaintiff in this case, that they sold it for parts because in their opinion they didn't want this car to go out because of the damage to it, whether fifty people come in and say this car was safe, makes no difference.

However, I am allowing this in for the purpose of making the determination whether they would let a car go out if it were in the condition that your witnesses are testifying it was in after it was repaired. For credibility only. The test is not what somebody else has to say; the test is what kind of car the sellers want on the market with their name on it. (R. 403a–404a).

Therefore, even assuming arguendo that the cars had been repaired safely, our decision is not altered. Again, the credible evidence supports Peugeot's contention of a good faith belief that the cars could not be repaired safely and in a manner so as not to risk Peugeot's reputation for durability.[9]

 Stout also argues that witnesses for Peugeot should not have been allowed to testify as to the alleged

9. Stout's own witness testified as to Peugeot's reputation on cross examination, an excerpt of which follows.

Q. Now, you mentioned something earlier about a strength factor which I don't think I understood. You said something about the way a Peugeot was built and it had a certain strength factor.
A. Well, Peugeot is known around the world to be one of the toughest and strongest cars ever built. That means the Peugeot people are concerned into how the car is built that's where I say the car is built with a strength factor that it's maybe one of the best we buy on the market today.
Q. I still don't understand the term. What is strong? What do you mean strong?
A. Well, as an example: A company like Peugeot would eventually employ 4,000 Spot welds in a car.
Q. Four thousand what?
A. Spot welds. I believe that Peugeot feels that four thousand may not be enough. So that their standards are higher.
BY THE COURT:
Q. When you say strength, you mean it is a stronger built car?
A. Stronger built car.
Q. It could withstand more than other cars can?
A. Yes, yes.
BY APPELLEE'S ATTORNEY:
Q. And you also said, did you not, that that was a major concern at Peugeot, their reputation?

prohibition on resale since there was a written contract. The parol evidence rule is only applicable where parties intend a writing to represent the complete and exclusive agreement between the parties.[10] There is no such intent here, as the bid letter (which Stout claims to represent the contract) is incomplete on its face, mentioning nothing but the price.[11] Although Peugeot could not offer parol evidence to show that a different price was agreed to, Peugeot can, under § 2–202 of the Uniform Commercial Code, offer testimony concerning items not discussed in the bid letter. This letter is not "sufficiently comprehensive to embody the aim and object of the parties", and therefore oral evidence

A. It's one of their major concerns, the reputation to build a strong car."
[R. 467a–468a]

10. 13 Pa.C.S.A. § 2202, which provides:
**§ 2202. Final written expression: parol or extrinsic evidence**
Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented:
(1) by course of dealing or usage of trade (section 1205) or by course of performance (section 2208); and
(2) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.
Note that under subsection (2) the writing would have to be a complete and exclusive statement. Stout's letter (see footnote 11 below) consisted only of the prices to be paid for the cars and was no more than an offer which Peugeot accepted by telephone. One of the bids was not accepted, further evidencing the fact that the letter was not to act as the contract.

11. The context of the bid letter is as follows: .
Gentlemen:
Following are our bids on damaged vehicles which I have inspected:

| Color | Ser # | Bid |
| --- | --- | --- |
| 1476 | 2757195 | $ 910.00 |
| 1384 | 2761061 | $1650.00 |
| 1394 | 2768068 | $1650.00 |

Very truly yours,

_____

JOHN STOUT

is permissible.[12] Peugeot's position in this case is not inconsistent with the terms contained in the bid letter.

■ Stout also objects to the introduction of the invoices into evidence. (R. 67a–82a, 481a–482a). The invoices, as discussed previously, contained the prohibition against repair and resale. We agree with the chancellor that the invoices were admissible for the purpose of establishing the intent and the credibility of the parties. In situations involving oral contracts, ascertaining the intent of the parties is indeed a difficult task. The invoices and damage reports (as well as Stout's evidence concerning repairs) are all of some aid in determining what was within the minds of the parties.[13] The invoices, which admittedly were read by Stout and to which he did not object, help to show that Peugeot was operating under the premise that the cars were to be sold for parts only and that Stout was aware of this fact. (R. 321a–326a).

■ Finally, Stout argues that Peugeot has not proved that a permanent injunction is in order. Peugeot was potentially liable in tort if the products were found to be defective and if that defect caused an accident. While it is true that even if there was such an occurrence, that the defect could be traced to the changes made by Stout, there is also the possibility that this factual question would be resolved otherwise. Peugeot should not be forced to face exposure to such possible liability unnecessarily.

12. *Gitt v. Myers,* 273 Pa.Superior Ct. 310, 314, 417 A.2d 664, 666 (1979). *See also Gianni v. R. Russell & Co.,* 281 Pa. 320, 126 A. 791 (1924) in which the court states:
 The writing must be the entire contract between the parties if parol evidence is to be excluded and to determine whether it is or not the writing will be looked at and if it appears to be a contract complete within itself, couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the engagement it is conclusively presumed that the whole engagement of the parties and the extent and manner of their undertaking, were reduced to writing. (citing cases)
 *Id.,* 281 Pa. 323, 126 A. 792.

13. We do agree with Stout that the invoices did not become part of the contract under 13 Pa.C.S.A. § 2207 which Peugeot's counsel had argued at trial.

Stout also considers to be significant the fact that he offered to personally indemnify Peugeot. Stout has not shown that he would be able to pay any possible award (which could be a substantial figure in such a liability case). While Peugeot can not prove the danger at this time, it is the potential of liability that constitutes the need for an injunction.

Thus all of the elements necessary for the issuance of a permanent injunction have been established. Actual and substantial injury has already occurred and is threatened in the future by Stout's actions.[14] Stout violated Peugeot's legal rights under the contract. The injury threatened to Peugeot is substantial and irreparable.[15] Because the threatened injury can not be compensated for in money damages, there is no adequate remedy at law.[16]

For all the above reasons, the lower court's order granting a permanent injunction is affirmed.

**14.** *Raitport v. Provident National Bank,* 451 F.Supp. 522, 530 (E.D.Pa. 1978).

**15.** *U.S. v. American Friends Service Committee,* 419 U.S. 7, 95 S.Ct. 13, 42 L.Ed.2d 7 (1975); *Williams v. Bridy,* 391 Pa. 1, 7, 136 A.2d 832, 836 (1957), *H. Daroff & Sons, Inc. v. Vitullo,* 350 Pa. 501, 506–07, 39 A.2d 595, 598–99 (1944).

**16.** *Miller v. American Tel. & Tel. Corp.,* 344 F.Supp. 344, 347–350 (E.D.Pa.1972).